CUDAHY, Circuit Judge.
Juan Cuevas-Perez appeals from the denial of his motion to suppress evidence, on the grounds that the warrantless use by law enforcement of a Global Positioning System (“GPS”) tracking device violated his Fourth Amendment rights. Consistent with this circuit’s existing precedent, we agree that the suppression motion should have been denied, and accordingly, we affirm.
I. Facts and Procedural History
The facts of this case are not in dispute. In 2008, federal Immigration and Customs Enforcement (ICE) agents, working with local Phoenix police, came to suspect Juan Cuevas-Perez of being involved in a drug distribution operation. They installed a pole camera outside Cuevas-Perez’s home, and its footage revealed Cuevas-Perez manipulating the hatch and rear door panels of his Jeep Laredo SUV (Jeep). At approximately noon on February 6, 2009, Phoenix detective Matthew Shay attached a GPS tracking unit to the Jeep while it was parked in a public area. No warrant was obtained for the GPS installation. The GPS device was programmed to send Detective Shay text message updates of its location every four minutes.
Shortly after the GPS installation, Cuevas-Perez embarked on a road trip that took him through New Mexico, Texas, *273 Oklahoma and Missouri, and ultimately into Illinois. Sometime on February 8, while Cuevas-Perez was in Missouri, Detective Shay learned that the batteries in the GPS device were running low. Not wanting to lose track of Cuevas-Perez, Detective Shay contacted regional ICE agents and advised them of the need for visual surveillance. Then Cuevas-Perez crossed the state line and entered Illinois. Accordingly, the ICE agents asked the Illinois State Police (ISP) to take up surveillance. Once they had done so, Detective Shay discontinued the use of the GPS device; it had been in use for a total of approximately 60 hours.
The ICE agents asked the ISP to find a reason to pull over the defendant’s vehicle if possible. An ISP trooper followed Cuevas-Perez for approximately 40 miles before pulling him over for remaining in the left-hand passing lane, a minor violation of Illinois traffic law.[1] A drug-detecting dog was dispatched to the scene, and the dog indicated the possible presence of narcotics. A subsequent search of the Jeep revealed nine packages of heroin secreted in the doors and the lining of the ceiling.
The Government charged Cuevas-Perez with possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1). Cuevas-Perez moved to suppress the drug evidence, arguing that it had been procured in violation of the Fourth Amendment. At the suppression hearing, the judge indicated that he believed the result was controlled by this court’s decision in United States v. Garcia, 474 F.3d 994 (7th Cir.2007). Accordingly, the court denied the suppression motion.
Cuevas-Perez entered a conditional guilty plea, preserving his right to appeal the suppression ruling. See Fed. R.Crim.P. 11(a)(2). Cuevas-Perez timely appealed. He raises three questions for our review, but given our decision it is unnecessary to reproduce them here.
II. Applicable Law
The Fourth Amendment guarantees freedom from unreasonable search and seizure, U.S. Const, amend. IV, and the Supreme Court has explained that a “search” exists for Fourth Amendment purposes where (1) a person has a subjective expectation of privacy, and (2) society is willing to recognize the expectation of privacy as objectively reasonable. Katz v. United States, 389 U.S. 347, 360, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring); see also Kyllo v. United States, 533 U.S. 27, 33, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001).
The foundational Supreme Court precedent for GPS-related cases is United States v. Knotts, 460 U.S. 276, 103 S.Ct. 1081, 75 L.Ed.2d 55 (1983), which held that the use of a beeper device to track a drug suspect did not violate the Fourth Amendment because it did not amount to a search or seizure. The Court explained that “[a] person traveling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another.” Id. at 281, 103 S.Ct. 1081. In United States v. Garcia, 474 F.3d 994 (7th Cir.2007), we considered the Fourth Amendment implications of the installation and use of a GPS device. In reliance on Knotts, we explained that GPS tracking is not a search. Id. at 997 (“GPS tracking is on the same side of the divide with ... surveillance cameras and ... satellite imaging, and if what they do is not searching in Fourth Amendment terms, neither is GPS tracking.”). We noted in particular that GPS surveillance utilizes technology to substitute “for an activity, *274 namely following a car on a public street, that is unequivocally not a search within the meaning of the [Fourth Amendment].” Id,.[2] At least two sister circuits have reached the same conclusion. See United States v. Marquez, 605 F.3d 604, 609-10 (8th Cir.2010); United States v. Pineda-Moreno, 591 F.3d 1212, 1217 (9th Cir.2010).
An important apparently contrary precedent has been established in the D.C. Circuit. United States v. Maynard, 615 F.3d 544 (D.C.Cir.2010). In Maynard, the court considered the Fourth Amendment implications of the uninterrupted use of a GPS device for a period lasting 28 days. The court held that prolonged GPS surveillance could amount to a search, because it may reveal more than just the movements of a vehicle on public roads; that is, it may reveal something approaching the totality of a person’s lifestyle, affairs and possible criminal activities during a long period. Id. at 558-63. The court stated in relevant part, “unlike one’s movements during a single journey, the whole of one’s movements over the course of a month is not actually exposed to the public because the likelihood anyone will observe all those movements is effectively nil.” Id. at 558 (emphasis omitted).
III. Discussion
We are called on to decide whether the factually straightforward case before us implicates the concerns articulated in Maynard,[3] or whether it is subject to the residual principle derived from Knotts and Garcia, that GPS tracking does not constitute a search. We believe that the present case is not like Maynard, and accordingly, we believe that the analysis of that case does not apply here.
The aspects of the search in Maynard that affected the court’s decision are absent here. The 28-day surveillance in Maynard was much lengthier than the 60-hour surveillance in the case before us. Moreover, the Maynard court repeatedly distinguished the surveillance at issue there from surveillance during a single journey. See Maynard, 615 F.3d at 558, 560, 562, 565. For instance, the court stated, “[s]urveillance that reveals only what is already exposed to the public— such as a person’s movements during a single journey — is not a search.” Id. at 565 (citing Knotts, 460 U.S. at 285, 103 S.Ct. 1081). The case before us, so far as the record reveals, involves such a “single-trip” duration of surveillance. Unlike in Maynard, the surveillance here was not lengthy and did not expose, or risk exposing, the twists and turns of Cuevas-Perez’s life, including possible criminal activities, *275 for a long period. As the Maynard court noted, the chances that the whole of Cuevas-Perez’s movements for a month would actually be observed is effectively nil — but that is not necessarily true of movements for a much shorter period.
As to the objection that the actual course of the GPS use is not known until long after the need for a warrant might arise, that may be true, but it is beside the point: the need vel non for a warrant depends on the purpose of the GPS use. And the purpose of the GPS attachment would generally be known ex ante, even though the actual facts of its use would only be known ex post. No different from any other case, the police here were obliged to decide ex ante whether their contemplated surveillance activities would require a warrant. Here, the purpose of the GPS was apparently only to record Cuevas-Perez’s trip across the country from Arizona. Therefore, assuming no significant deviation from the indicated purpose, no warrant would be required even if the Maynard analysis were applied. In that regard, it may be that the present state of precedent provides only piecemeal guidance, but this is unexceptional in the case of Fourth Amendment issues, and is only a reason that law enforcement may wish to obtain a warrant in close cases.
Cuevas-Perez further argues that the GPS device in his case was different and more intrusive than those addressed in prior cases. This argument is certainly worth a try, since “the Supreme Court has insisted ... that the meaning of a Fourth Amendment search must change to keep pace with the march of science.” Garcia, 474 F.3d at 997 (internal citation omitted). In particular, Cuevas-Perez points to the fact that this GPS sent (or was capable of sending) minute-by minute messages to its operator remotely, instead of needing to be physically retrieved like models at issue in earlier eases. See Pineda-Moreno, 591 F.3d at 1213; Garcia, 474 F.3d at 995. But we are not persuaded that real-time revelation of location (although additional to the information provided in Garcia) necessarily serves the impermissible ends of the extensive GPS surveillance at issue in Maynard. And looking beyond Maynard, we do not consider this particular advancement to be significant for Fourth Amendment purposes in general: real-time information is exactly the kind of information that drivers make available by traversing public roads. The historical data gathered and stored on comparatively primitive GPS devices is actually less akin to the publicly-exposed information on which the Fourth Amendment permissibility of GPS tracking is based.[4]
The use of GPS by law enforcement is a Fourth Amendment frontier. Undoubtedly, future cases in the tradition of Maynard will attempt to delineate the boundaries of the permissible use of this *276 technology — a technology surely capable of abuses fit for a dystopian novel. But the present case does not call on us to codify the limits of allowable GPS use; indeed, in our view the case before us cannot be distinguished from the quite recent decision of this court in Garcia in any legally meaningful way. Viewing the present case as controlled by that precedent, we Affirm.

. See 625 ILCS 5/11-701.

. With respect to an argument that Garcia considers only the installation of a GPS device, and not the subsequent monitoring, we reject this implausibly narrow interpretation. The Garcia court might have been more explicit about what it was and was not deciding, but several statements make it unambiguous that the court was discussing GPS tracking and not merely installation. The court stated, "[t]he only issue is whether evidence obtained as a result of a tracking device attached to his car should have been suppressed...." Id. at 995. In like vein, the court described the relevant police conduct as a substitute for "following a car on a public street.” Id. at 997. That comparison applies to tracking, but not installation. A contrary reading would imply that the court made those statements and then affirmed Garcia’s conviction without actually deciding whether tracking him violated the Fourth Amendment and without a word about why the issue was not being reached. We believe our reading is more plausible.

. We emphasize that, although an abundance of caution dictates that we consider whether Maynard affects the present case, our discussion of Maynard is not meant to approve or disapprove the result the D.C. Circuit reached under the facts of that case.

. Several other courts have considered the distinction and found it to be unimportant. See, e.g., State v. Sveum, 319 Wis.2d 498, 769 N.W.2d 53, 63 (Wis.Ct.App.2009) (“It is not rational to limit the admission of tracking information based on whether it is obtained in real time by a signal or at a later time by direct access to the device.”), aff'd, 328 Wis.2d 369, 787 N.W.2d 317 (2010), cert. denied, - U.S. -, 131 S.Ct. 803, 178 L.Ed.2d 537 (2010); Foltz v. Commonwealth, 57 Va.App. 68, 698 S.E.2d 281, 289-90 (2010) ("Unlike here, where the GPS system automatically tracked and recorded the movement of the van [in real time], the beeper technology discussed in Knotts required that the police follow the signal from the beeper as the container was moved. We find that this advancement in tracking technology provides an insufficient basis for distinguishing Knotts.") (internal citation omitted), reh’g en banc granted, 57 Va.App. 163, 699 S.E.2d 522 (2010).