# United States Court of Appeals
## For the First Circuit

---

No. 13-1332

UNITED STATES OF AMERICA,

Appellee,

v.

ABDULFATAH OLADOSU,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. William E. Smith, U.S. District Judge]

---

Before

Lynch, Chief Judge,
Stahl and Lipez, Circuit Judges.

---

George J. West for appellant.
Donald C. Lockhart, Assistant United States Attorney, with
whom Peter F. Neronha, United States Attorney, was on brief, for
appellee.

---

February 28, 2014

---

**STAHL, Circuit Judge**.    Because this case is largely controlled by another that we have decided today, United States v. Baez, No. 13-1025, ___ F.3d ___ (1st Cir. Feb. 28, 2014), we will keep our opinion brief.

As part of an investigation into a heroin-smuggling organization, Officer Robert DiFilippo of the Rhode Island State Police High Intensity Drug Trafficking Area (HIDTA) task force placed a global positioning system (GPS) device on defendant-appellant Abdulfatah Oladosu's car and used that device to track Oladosu's movements for forty-seven days, from February 12, 2010 until March 30, 2010.[1]    The GPS monitoring helped uncover information that allowed the task force to arrange a controlled delivery of heroin to Oladosu and a co-defendant, which in turn led to Oladosu's arrest.  Oladosu was charged with, and eventually pled guilty to, possessing and conspiring to possess one hundred grams or more of heroin with the intent to distribute it.

After Oladosu moved to suppress the evidence obtained as a result of the warrantless GPS monitoring, but before the district court ruled on the motion, the Supreme Court decided, in United States v. Jones, 132 S. Ct. 945 (2012), that the installation and

---

[1] The device was in "sleep mode," and thus inactive, for eighteen of those days, while Oladosu was out of the country.  The government therefore argues that the monitoring period should be viewed as having lasted for just twenty-nine days.  Because we find the distinction immaterial for purposes of the good-faith exception in this case, we will use Oladosu's number.

use of a GPS tracker on a car constitutes a Fourth Amendment search. The district court nonetheless denied Oladosu's motion to suppress, concluding that the officers had relied in good faith on pre-Jones legal precedent and that, under Davis v. United States, 131 S. Ct. 2419 (2011), the exclusionary rule should not apply. United States v. Oladosu, 887 F. Supp. 2d 437 (D.R.I. 2012).

Before the parties briefed the case on appeal, we decided United States v. Sparks, 711 F.3d 58 (1st Cir. 2013), in which we upheld eleven days of pre-Jones warrantless GPS tracking under the good-faith exception to the exclusionary rule. We concluded that, at the time of the surveillance at issue in Sparks, settled, binding precedent in the form of United States v. Knotts, 460 U.S. 276 (1983), and United States v. Moore, 562 F.2d 106 (1st Cir. 1977), authorized the agents' conduct. Sparks, 711 F.3d at 67.

Our review here is de novo. See Baez, slip op. at 7. We begin with an argument to which Oladosu has devoted much of his brief but to which we need not devote much of our opinion: that Sparks was wrongly decided.[2] As Oladosu acknowledges, "prior panel decisions are binding upon newly constituted panels in the absence of supervening authority sufficient to warrant disregard of established precedent," United States v. Wogan, 938 F.2d 1446, 1449

---

[2] Shortly after Oladosu filed his opening brief in this case, the Supreme Court denied the respondent's petition for a writ of certiorari in Sparks. See Sparks v. United States, 134 S. Ct. 204 (2013).

(1st Cir. 1991), and he has not made that showing. See also Sanchez v. United States, 740 F.3d 47, 56 (1st Cir. 2014) (describing the rare instances in which we will depart from circuit precedent).

Oladosu also attempts to distinguish his case from Sparks based on the nature of the GPS monitoring to which he was subjected. That monitoring was, he claims, "prolonged and intrusive," and it amounted to a "dragnet" within the meaning of Knotts. See 460 U.S. at 283-84; see also Baez, slip op. at 9-10 (discussing the Knotts "dragnet" passage). As in Baez, we need not decide here "what type of law enforcement conduct, if any, might have implicated the Knotts 'dragnet' passage in the pre-Jones era," Baez, slip op. at 13, because Oladosu has given us no reason to believe that the GPS surveillance to which he was subjected was qualitatively different from the surveillance in Sparks. The only distinction Oladosu has made between his case and Sparks is that the device remained on his car for forty-seven days, rather than eleven, and we see no reason why that fact alone should take this case outside the scope of Sparks and the good-faith exception. See id. (upholding 347 days of GPS monitoring under the good-faith exception to the exclusionary rule). While Sparks does not stand for the proposition that the duration of GPS monitoring conducted in the pre-Jones era can never be relevant for Fourth Amendment purposes, see id. at 10-11, Oladosu has not demonstrated that the

-4-

surveillance here was "so extensive or indiscriminate that the officers who conducted it could not fairly be said to have been complying with <u>Knotts</u>." <u>Id.</u> at 11.[3]

Finally, Oladosu suggests that this case differs from <u>Sparks</u> because, about two weeks after the initial installation of the GPS device (which occurred while Oladosu's car was parked on a public street), Detective DiFilippo walked ten to twelve feet up Oladosu's driveway to change the tracker's batteries, which required removal and reinstallation of the device. It is true that, in <u>Sparks</u>, the GPS device was installed while Sparks's car was parked not in a driveway but in a private parking lot shared by tenants of two residential buildings. <u>United States</u> v. <u>Sparks</u>, 750 F. Supp. 2d 384, 387 (D. Mass. 2010). The <u>Sparks</u> district court had concluded that the parking lot was not a constitutionally protected area, <u>id.</u> at 388-89, a finding that we were not asked to review on appeal.

---

[3] Oladosu's brief implies that the HIDTA task force planted the GPS device on his car and then sat back and "wait[ed] for anything illegal to occur," but the record belies that claim. Like the law enforcement agents in <u>Baez</u>, the HIDTA task force had good reason to attach the device and conduct the monitoring. <u>See</u> <u>Baez</u>, slip op. at 11-12. Before attaching the device, the task force corroborated Oladosu's role in the heroin-smuggling operation through information from cooperating witnesses, physical surveillance, a pole camera, and pen registers on Oladosu's cell phones. <u>See</u> <u>Oladosu</u>, 887 F. Supp. 2d at 438-39. A review of the record also indicates that, during the time the GPS device was on Oladosu's car, the task force uncovered evidence of Oladosu's ongoing participation in the smuggling ring from sources other than the GPS.

Yet Oladosu has failed to explain the legal significance of that factual distinction between his case and Sparks. It is not evident whether his argument is that the reinstallation of the device in his driveway renders Knotts and Moore inapplicable and thus places this case outside the scope of the good-faith exception, or that the reinstallation constituted an independent Fourth Amendment violation that we should analyze separately. If Oladosu wished to argue that the driveway formed part of the "curtilage" of his home, he should have made some attempt to place his case within the parameters of the relevant case law. See, e.g., United States v. Dunn, 480 U.S. 294, 301 (1987) (outlining four criteria to guide the "curtilage" analysis); United States v. Brown, 510 F.3d 57, 65 (1st Cir. 2007) (discussing some of the factors we have considered in determining whether a driveway is part of the "curtilage"). Because the argument is undeveloped, it is waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

Thus, for the reasons we articulated in Baez and Sparks, we conclude that the agents here were acting in objectively reasonable reliance on then-binding precedent when they installed the GPS device on Oladosu's car and engaged in the subsequent monitoring. See Baez, slip op. at 13; Sparks, 711 F.3d at 67. We therefore find that the good-faith exception to the exclusionary

rule applies, see Davis, 131 S. Ct. at 2423-24, and we affirm the district court's denial of Oladosu's motion to suppress.