In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-1565

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

HENRY R. BROWN,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 06-CR-327 — **C.N. Clevert, Jr.**, *Judge.*

ARGUED NOVEMBER 4, 2013 — DECIDED MARCH 4, 2014

Before EASTERBROOK, KANNE, and TINDER, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. A jury convicted Henry Brown of conspiring to distribute more than five kilograms of cocaine. Brown's recidivism led the judge to sentence him to life imprisonment. His principal contention on appeal is that the court should have prevented the prosecutor from introducing evidence traceable to information gleaned from a GPS (Global Positioning System) monitor that investigators attached to a car in 2006. The Supreme Court held in 2012

that the intrusion on the property interest of a car's owner is a "search," valid only if reasonable. *United States v. Jones*, 132 S. Ct. 945 (2012). Brown maintains that employing GPS location services is reasonable only with the support of a warrant issued on probable cause.

*Jones* did not hold—though five Justices suggested in concurring opinions—that monitoring a car's location for an extended time is a search even if the car's owner consents to installation of the GPS unit, so that no property rights have been invaded. 132 S. Ct. at 954–57 (Sotomayor, J., concurring), 957–64 (Alito, J., concurring, joined by Ginsburg, Breyer & Kagan, JJ.). An extension of *Jones* along the concurring opinions' lines is essential to Brown's position, since this GPS unit was installed without a trespass. A Jeep's owner decided to cooperate with the police in their investigation of his confederates and authorized the attachment of a tracker. The police thought that this step is as permissible as asking their informant to wear a concealed recording or broadcasting device; Brown, by contrast, maintains that monitoring a GPS locator requires probable cause and a warrant even if monitoring an informant's wire does not. We bypass that question, as well as other issues such as whether a person using someone else's car (or that person's co-conspirator) can protest the use of evidence derived from a device that shows no more than the car's location. No matter how these substantive issues come out, it would be inappropriate to use the exclusionary rule to suppress evidence derived from this GPS locator before the Supreme Court's decision in *Jones*. Until then, precedent would have led reasonable officers to believe that using GPS to track a car's location was not a search.

The exclusionary rule is designed to deter violations of the fourth amendment. The Supreme Court has concluded that the slight deterrent benefit of excluding evidence derived from searches that were proper when conducted—but held to be invalid in light of later precedent—does not justify the injury to the public weal when criminals go unpunished. *Davis v. United States*, 131 S. Ct. 2419, 2423–24 (2011), announced this rule: "searches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule" even if that precedent is later held to be incorrect. Before *Jones*, "binding appellate precedent" in this circuit had established that installation of a GPS device, and the use of the location data it produces, are not within the scope of the fourth amendment. See *United States v. Garcia*, 474 F.3d 994 (7th Cir. 2007); *United States v. Cuevas-Perez*, 640 F.3d 272 (7th Cir. 2011). It appears to follow that the exclusionary rule does not apply to the acquisition of GPS location data, within the Seventh Circuit, before *Jones*.

That proposition would be straightforward if the evidence had been derived from a GPS device after February 2, 2007, when *Garcia* created the "binding precedent" for this circuit. See, e.g., *United States v. Sparks*, 711 F.3d 58 (1st Cir. 2013); *United States v. Andres*, 703 F.3d 828 (5th Cir. 2013); *United States v. Pineda-Moreno*, 688 F.3d 1087 (9th Cir. 2012); *United States v. Ransfer*, 2014 U.S. App. LEXIS 1669 (11th Cir. Jan. 28, 2014). All of these decisions conclude that *Davis* forecloses the use of the exclusionary rule for pre-*Jones* monitoring that had the blessing of circuit-level precedent.

But the GPS data that led to the evidence at Brown's trial was acquired in 2006. He contends that there was no "binding appellate precedent" in 2006 and that the exclusionary

rule therefore is available. He relies on *United States v. Martin*, 712 F.3d 1080 (7th Cir. 2013), which doubted whether *Davis* applies to pre-*Jones* GPS data within the states of the Eighth Circuit, which lacked any decisions comparable to *Garcia* and *Cuevas-Perez*. A panel of the Third Circuit lent support to Brown's position by holding that *Davis* is irrelevant to pre-*Jones* GPS data within the Third Circuit's territory, precisely because it had not held (before *Jones*) that using GPS to reveal a car's location was not a search. *United States v. Katzin*, 732 F.3d 187 (3d Cir. 2013).

*Martin* ruminated about the effect of *Davis* but did not produce a holding on that score because the panel found that the GPS unit was only remotely related to the contested evidence. *Katzin* has been vacated on the grant of rehearing en banc. 2013 U.S. App. LEXIS 24722 (3d Cir. Dec. 12, 2013). And *United States v. Aguiar*, 737 F.3d 251 (2d Cir. 2013), disagreeing with the Third Circuit's panel, squarely holds that *Davis* covers pre-*Jones* GPS monitoring in a jurisdiction that, like the Third and Eighth Circuits, did not have local precedents. *Aguiar* concludes that for the purpose of *Davis* the "binding appellate precedent" is supplied by *United States v. Knotts*, 460 U.S. 276 (1983), and *United States v. Karo*, 468 U.S. 705 (1984), both of which long predate the monitoring to which Brown objects.

*Knotts* holds that monitoring a signal from a "beeper"—a radio that transmits a signal whose location may be derived via triangulation—is not a search. A GPS unit used in law enforcement transmits or stores its own location; triangulation by the police is not required; but the information the police obtain is the same no matter which technology they use. *Karo* adds that the installation of a beeper is not a search, or

at least does not require probable cause or a warrant, if the owner of the property into which the beeper is placed consents, even if the beeper then is used to monitor the location of someone who did not consent. We concluded in *Garcia* and *Cuevas-Perez* that *Knotts* and *Karo* jointly show that tracking a car's location by GPS is not a search no matter how long tracking lasts. We earlier held in *Garcia*, relying on those two decisions, that installation of the GPS locator does not come within the fourth amendment because it does not interfere with the vehicle's use in transportation. *Jones* rejects that understanding but states that the holding of *Karo* concerning devices installed with consent "is perfectly consistent with the one we reach here." 132 S. Ct. at 952.

Because the GPS unit that played a role in the gathering of evidence against Brown was installed with the consent of the Jeep's owner, *Knotts* and *Karo* are "binding appellate precedent" for the purpose of *Davis*. It may well be that five Justices (those who joined the two concurring opinions in *Jones*) are prepared to hold that long-term monitoring of a GPS tracker is a search, even if installation has the imprimatur of the vehicle's owner, but *Jones* did not reach that conclusion, and as of 2006 *Karo* supported the device's installation, while *Knotts* meant that the monitoring was not within the fourth amendment's scope. If those conclusions are wrong, the Supreme Court has yet to *hold* so, so *Knotts* and *Karo* provided solid ground for objectively reasonable reliance by the police.

That conclusion makes it unnecessary to decide whether this circuit will follow *Aguiar* in holding that *Davis* governs *all* pre-*Jones* GPS tracking. How *Davis* applies to nonconsensual installation before February 2, 2007, when *Garcia*

was released, remains an open question here. But with the panel decision in *Katzin* having been vacated, all of the extant appellate precedent is on the side of applying *Davis*. There is legitimate debate about whether precedent from Circuit A could be deemed "binding" (for the purpose of *Davis*) when the search occurs in Circuit B, where the issue remains unresolved. Still, police and the FBI (or the lawyers advising them) often rely on precedent from one circuit when another has yet to address a question. One can doubt that much deterrence is to be had from telling the police that they are not entitled to rely on decisions issued by several circuits, just because the circuit covering the state in which an investigation is ongoing lacks its own precedent. If the question were whether police who installed a GPS locator, in reliance on Circuit A's precedent, could be ordered to pay damages when, years later, Circuit B disagreed with Circuit A, the answer would be no. It's hard to see why the exclusionary rule should be handled differently. But that's a question for another day.

Brown makes three other arguments, none of which requires extended discussion.

Kevin Arms owned the Jeep in which the GPS unit had been installed. He alerted police one day that Troy Lewis was driving the Jeep to Milwaukee with 10 kilograms of cocaine for Arms and his confederates (including Brown). A GPS device does not reveal a vehicle's contents, but it may have been used to locate the Jeep, which was stopped in Racine. Police found 10 kilograms of cocaine, just as Arms said they would. And Lewis, like Arms, flipped after being caught; he testified against Brown at trial. Brown proposed to cross-examine Lewis about a 1995 conviction; the district

judge curtailed this cross-examination under Fed. R. Evid.
403, ruling that it would take the trial too far afield. That was
not an abuse of discretion. The right to cross-examine wit-
nesses is not unlimited; it suffices if the judge allows the ac-
cused to explore a witness's background and potential bias.
The judge allowed the defense that latitude and acted rea-
sonably in concluding that diverting the trial into an investi-
gation of a mid-1990s drug enterprise, operating eight years
before the outset of the conspiracy with which Brown was
charged, could confuse the jury. That's an adequate basis for
invoking Rule 403. See, e.g., *United States v. Smith*, 454 F.3d
707, 714 (7th Cir. 2006).

The second dispute concerns evidence that Brown fled
from the police when they tried to arrest him. (The flight
was a high-speed car chase, but details do not matter.) The
district judge allowed the jury to infer, from that flight,
Brown's consciousness of his own guilt. He maintains that
he did not know that he was under investigation; if so, it
would be inappropriate to infer from the flight any mental
state other than unwillingness to be in custody. See *United
States v. Russell*, 662 F.3d 831, 850 (7th Cir. 2011). But the
prosecution introduced evidence that a search warrant had
been executed at the residence of Brown's brother Randye
the week before, and that during the search the officers said
that they were looking for Brown, for whom an arrest war-
rant had been issued, as part of an investigation into the dis-
tribution of cocaine. The jury was entitled to conclude that
Brown and his brother were in contact; Brown fled in
Randye's car.

Finally, Brown contends that the district judge should
not have admitted an affidavit from attorney Jack Rimland

attesting that a receipt for $10,000 found in a search of Brown's residence was a business record—in other words, that Rimland had issued the receipt to Brown as payment for legal services. He allows that *if* the receipt was a business record it was admissible under Fed. R. Evid. 803(6) and 902(11), and was relevant to the prosecution's case, but maintains that the affidavit was hearsay and, since Rimland did not testify, violated the confrontation clause of the sixth amendment. (The receipt, by contrast, is not testimonial and is outside the scope of the confrontation clause. On the definition of "testimonial" materials, see *Michigan v. Bryant*, 131 S. Ct. 1143 (2011). The affidavit likewise was not testimonial, see *United States v. Ellis*, 460 F.3d 920, 923–24 (7th Cir. 2006).)

The district judge should not have allowed the jury to see Rimland's affidavit, which in addition to being hearsay was not relevant to any issue in the prosecution. Its only function was to get the receipt into evidence. The prosecutor, the defense attorney, and the judge all appear to have assumed that the jury needed the affidavit in order to decide whether the receipt is a business record. Yet judges, not juries, decide whether evidence is admissible, and for the purpose of that decision the hearsay rule does not apply. See Fed. R. Evid. 104(a). The judge should have decided for himself whether the receipt is a business record (which it is) and, having made that decision, allowed only the receipt into the trial record.

Although the affidavit should not have been admitted, the error was harmless precisely because it served only to pin down the status of the receipt. If the judge had followed Rule 104(a) and used the affidavit outside the jury's presence, the receipt still would have been admitted, for whatev-

er value it had. The affidavit did not make matters worse for Brown and so does not entitle him to a new trial.

AFFIRMED