In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 14-1981

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DWAN RASHID TAYLOR,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:12-CR-00042-001 — **Jane E. Magnus-Stinson**, *Judge.*

———————————

ARGUED DECEMBER 17, 2014 — DECIDED JANUARY 14, 2015

———————————

Before WILLIAMS, SYKES, and HAMILTON, *Circuit Judges.*

PER CURIAM. Dwan Taylor appeals the denial of his motion to suppress drugs and guns that the police found in his storage locker pursuant to a search warrant. Indianapolis police learned the location of the storage locker by monitoring a Global Positioning System ("GPS") unit that they attached to his car without a warrant in 2011. That was before the Supreme Court held that attaching a GPS device to a car for purposes of gathering information was a search

under the Fourth Amendment. *See United States v. Jones*, 132 S. Ct. 945 (2012). Because the officers used the GPS monitor in objectively reasonable reliance on binding appellate precedent in effect at the time, the suppression motion was properly denied.

## I. Background

In June 2011 Detective Sergeant Garth Schwomeyer of the Indianapolis Metropolitan Police Department received a tip that Taylor possessed cocaine and firearms. Schwomeyer checked Taylor's criminal history and learned that he had been convicted in 1997 for possessing cocaine. Schwomeyer then conducted surveillance at an address in Indianapolis that was linked to Taylor and observed what he believed to be a drug deal. He did not recognize the people involved, but when he ran the license plates of their cars, he discovered that two cars were registered to men who also had been convicted of possessing or trafficking cocaine.

Schwomeyer continued to investigate Taylor over the next three months. A confidential informant reported that Taylor was trafficking kilogram quantities of cocaine, and a fellow officer told Schwomeyer that Taylor associated with cocaine traffickers. In addition, Taylor's phone records reflected that his most frequent contact had been convicted in 2006 of dealing cocaine.

Based on Schwomeyer's investigation, a deputy prosecutor for Marion County submitted a petition to the Marion County Superior Court in September 2011 requesting judicial approval to attach a GPS unit to Taylor's car for a period of 60 days. The petition stated that the GPS device would be

attached to the exterior of the car ("inside of a fender") with "a magnet and/or straps," that it would be installed and later removed "while the vehicle was either in a public place or upon private property where members of the general public would have access to [the] vehicle," and that the device "would be powered either by an internal battery or by connecting [it] to the battery of the vehicle." In support of the petition, the deputy prosecutor submitted an affidavit from Schwomeyer describing his investigation and also an affidavit from Officer Chris Cavanaugh, who explained the operation of the GPS unit. Officer Cavanaugh attested that the GPS device could collect location data at a specific interval (for example, every four seconds) and that officers could later retrieve that data through the Internet "by having the GPS tracking unit transmit its stored data."

A Marion County Superior Court judge granted the petition on these terms, and a GPS unit was attached to Taylor's car. About two weeks later, police learned from the GPS data that Taylor had traveled to a storage facility in Indianapolis. Schwomeyer spoke to both the manager and the owner of the storage facility and learned that Taylor rented a storage locker there. He went to the facility with a drug-detection dog, and the dog alerted just outside of Taylor's locker.

Schwomeyer then applied for a warrant to search the storage unit. In an affidavit submitted to the Marion County Superior Court, Schwomeyer described the investigation and stated that he had learned the location of Taylor's storage locker through "surveillance." He did not mention that the surveillance involved GPS tracking of Taylor's car.

A different Marion County judge reviewed the warrant application and authorized a search of Taylor's storage

locker. The police searched the locker and found 752.61 grams of cocaine, four firearms, and digital scales. Taylor was charged in federal court with one count of possessing with intent to distribute 500 grams or more of a mixture or substance containing cocaine, 21 U.S.C. § 841(a)(1), (b)(1)(B)(ii), and four counts of possessing a firearm as a felon, 18 U.S.C. § 922(g).

Taylor moved to suppress the storage-locker evidence as the fruit of an unlawful search. He maintained that the warrantless tracking of his car via GPS violated the Fourth Amendment. He relied on the Supreme Court's decision in *Jones*, which held that the installation of a GPS device on a car is a search for Fourth Amendment purposes. 132 S. Ct. at 949. Taylor also argued that the search warrant was invalid because Schwomeyer had omitted from the affidavit any reference to GPS tracking. (Taylor raised other arguments, but he has abandoned them on appeal.)

Because *Jones* was issued three months *after* the police tracked Taylor's car via GPS, the government opposed the suppression motion based on the good-faith exception established in *Davis v. United States*, which held that the exclusionary rule does not apply "when the police conduct a search in objectively reasonable reliance on binding appellate precedent." 131 S. Ct. 2419, 2434 (2011). *Davis*'s good-faith exception applied, the government argued, because the police had reasonably relied on this court's pre-*Jones* decisions upholding warrantless GPS tracking. *See United States v. Garcia*, 474 F.3d 994 (7th Cir. 2007); *United States v. Cuevas-Perez*, 640 F.3d 272 (7th Cir. 2011). The government also noted that the police officers had consulted with a deputy prosecutor and reasonably relied on judicial

approval before installing and monitoring the GPS device. Finally, the government maintained that the search warrant for Taylor's storage locker was valid because Schwomeyer had not omitted any material fact in his warrant affidavit.

Taylor countered that reliance on *Garcia* and *Cuevas-Perez* was not reasonable because the use of the GPS unit in this case was more intrusive than in those cases. Unlike *Garcia* and *Cuevas-Perez*, law enforcement here had "asked for and received permission to enter onto *private* property, to use the vehicle's battery power, and to monitor Taylor's vehicle for *60* days."

The district court agreed with Taylor that *Davis*'s good-faith exception did not apply but nonetheless denied Taylor's motion to suppress on the ground that law enforcement had reasonably relied on judicial authorization when using the GPS. The court explained that *Garcia* and *Cuevas-Perez* were distinguishable because the GPS devices used in those cases did not draw power from the car's battery, were not installed while the car was parked on private property, and did not track the car's movement for 60 days. Thus, the court observed, "law enforcement could not have objectively relied on *Garcia* and *Cuevas-Perez* when the cases do not explicitly, or for that matter implicitly, authorize the specific actions taken here." But suppression was unwarranted, the court held, because the officers had obtained judicial authorization to use the GPS device and their reliance on that authorization was objectively reasonable. The judge also explained that applying the exclusionary rule was not appropriate because the rule is meant to deter culpable conduct by law enforcement and there was no culpable conduct in this case. Finally, the judge rejected

Taylor's argument that the warrant was defective because Schwomeyer's affidavit had omitted material facts.

While Taylor's case was still pending in the district court, we issued *United States v. Brown*, 744 F.3d 474 (7th Cir.), *cert. denied*, 135 S. Ct. 378 (2014), which applied *Davis*'s good-faith exception to the use of a GPS device to track a car in 2006, before *Garcia* or *Cuevas-Perez* were decided. The GPS device in *Brown* was installed with the consent of the car's owner, but it was used to track a driver who had not consented. *Id.* at 476. Our decision in *Brown* confirmed that *Garcia* and *Cuevas-Perez* were binding appellate precedent in this circuit establishing "that installation of a GPS device, and the use of the location data it produces, are not within the scope of the [F]ourth [A]mendment." *Id.* And even though the GPS tracking in *Brown* predated *Garcia* and *Cuevas-Perez*, we concluded that there was nonetheless binding appellate precedent in 2006 for the purpose of *Davis*'s good-faith exception: to wit, the Supreme Court's decisions in *United States v. Knotts*, 460 U.S. 276 (1983) (holding that law enforcement's monitoring of a signal from beeper is not a search), and *United States v. Karo*, 468 U.S. 705 (1984) (holding that *installation* of beeper is not a search if owner of the property on which beeper is installed consents, even if beeper is used to track someone who did not consent). *See Brown*, 744 F.3d at 477–78.

Soon after we decided *Brown*, the district judge issued a "Supplemental Entry" that is at the center of this appeal. In that docket entry, the judge explained that *Brown*'s "characterization of *Garcia* and *Cuevas-Perez*" differed from her earlier analysis and supported the government's position that *Davis*'s good-faith exception *did* apply to the GPS

tracking of Taylor's car. Thus, the judge concluded, *Davis*'s good-faith exception supplied additional support for denying Taylor's motion to suppress.

Taylor pleaded guilty to the drug-trafficking crime, *see* § 841(a)(1), (b)(1)(B)(ii), but preserved his right to appeal the district court's order denying his motion to suppress. The government dismissed the remaining charges, and the judge sentenced Taylor to 150 months in prison.

## II. Analysis

Taylor contends that the district court erred by relying on *Brown* to conclude that *Davis*'s good-faith exception applied to the GPS tracking of his car. He argues that *Brown* was not meant to state a "blanket rule," but rested instead on the narrow ground that the police had obtained the owner's consent before attaching the GPS device to the car.

We disagree. The district court correctly concluded that *Brown* supports the application of *Davis*'s good-faith exception here. *Brown* makes clear that *Garcia* and *Cuevas-Perez* are pre-*Jones* binding circuit precedent holding that "installation of a GPS device, and the use of the location data it produces, are not within the scope of the [F]ourth [A]mendment." *Brown*, 744 F.3d at 476. *Brown* also establishes that *Davis*'s good-faith exception more generally applies to pre-*Jones* use of GPS devices to track a suspect's car based on earlier Supreme Court precedent.[1]

_____

[1] Every other circuit to consider the question has applied *Davis*'s good-faith exception to pre-*Jones* GPS tracking by law enforcement. Some courts have relied on circuit-level binding appellate precedent to

It's true that the GPS tracking at issue in *Brown* occurred before this court's decisions in *Garcia* or *Cuevas-Perez*, but we made clear that the result in *Brown* would have been the same (indeed, "straightforward") if the tracking had occurred post-*Garcia*, as it did in this case. *See id.* at 477. The fact that law enforcement in *Brown* had obtained the consent of one of the car's owners before attaching the GPS device does not change the outcome here; the officers who used the GPS to track Taylor's car could have reasonably relied on *Garcia* for the proposition that consent was not necessary. As *Brown* explained, *Garcia* held "that installation of the GPS locator does not come within the [F]ourth [A]mendment because it does not interfere with the vehicle's use in transportation." *Id.*

Taylor argues that *Davis*'s good-faith exception does not apply because law enforcement exceeded the holdings in *Garcia* and *Cuevas-Perez* by requesting judicial authorization to (1) track his car for up to 60 days; (2) attach the GPS unit to his car when parked on private property; and (3) use the car's battery to power the GPS unit. Before addressing these arguments, we note that the record is scant regarding how

do so. *See United States v. Fisher*, 745 F.3d 200 (6th Cir.), *cert. denied*, 135 S. Ct. 676 (2014); *United States v. Smith*, 741 F.3d 1211 (11th Cir. 2013), *cert. denied*, 2014 WL 2558149; *United States v. Sparks*, 711 F.3d 58 (1st Cir.), *cert. denied*, 134 S. Ct. 204 (2013); *United States v. Andres*, 703 F.3d 828 (5th Cir.), *cert. denied*, 133 S. Ct. 2814 (2013). Circuits without local precedent have relied on the Supreme Court's pre-*Jones* decisions. *See United States v. Katzin*, 769 F.3d 163 (3d Cir. 2014) (en banc); *United States v. Stephens*, 764 F.3d 327 (4th Cir. 2014); *United States v. Aguiar*, 737 F.3d 251 (2d Cir. 2013), *cert. denied*, 135 S. Ct. 400 (2014).

the police actually installed the GPS device and where
Taylor's car was parked when they did so. Taylor and the
government agreed that an evidentiary hearing on the
suppression motion was unnecessary. This deficiency in the
record makes it a bit difficult to assess Taylor's argument:
"The reasonableness of an official invasion of the citizen's
privacy must be appraised on the basis of the facts as they
existed at the time that invasion occurred." *United States v.
Jacobsen*, 466 U.S. 109, 115 (1984); *see Terry v. Ohio*, 392 U.S. 1,
21–22 (1968); *United States v. Brown*, 64 F.3d 1083, 1086 (7th
Cir. 1995); *United States v. Hamilton*, 591 F.3d 1017, 1022 (8th
Cir. 2010); *United States v. Alexander*, 540 F.3d 494, 501 (6th
Cir. 2008).

Despite the underdeveloped record, we conclude that the
district court correctly rejected Taylor's arguments. We begin
with his challenge to the length of the GPS monitoring and
conclude that it is foreclosed by precedent. As noted in
*Brown*, our decisions in *Garcia* and *Cuevas-Perez* explained
that the Supreme Court's decisions in *Knotts* and *Karo* "joint-
ly show that tracking a car's location by GPS is not a search
*no matter how long tracking lasts*." *Brown*, 744 F.3d at 477
(emphasis added). Moreover, *Brown* explained that even
before *Garcia* and *Cuevas-Perez* were decided, *Knotts* estab-
lished that monitoring a GPS unit attached to a car is "not
within the [F]ourth [A]mendment's scope." *Id.* at 478. Thus,
it was reasonable for law enforcement to rely on *Knotts*—and
by extension, *Garcia* and *Cuevas-Perez*—for the proposition
that the *length* of the GPS monitoring is irrelevant under the
Fourth Amendment. And if it was objectively reasonable for
law enforcement to conclude that *Knotts*, which involved
only brief tracking with a beeper, authorizes long-term GPS

tracking, then reliance on *Garcia* and *Cuevas-Perez* was likewise objectively reasonable.[2]

We also reject Taylor's argument that the GPS unit was not installed in good faith because law enforcement sought to power the device with the car's battery. As an initial matter, Taylor does not explain how the manner in which the device was powered is relevant. Moreover, as the government points out, it appears from the record that the GPS device was *not* actually attached to the car's battery but rather was self-powered. Indeed, the petition for judicial authorization states that the device would be placed "inside of a fender" and attached with only "a magnet and/or straps," and Schwomeyer attested that the GPS unit was installed by being "placed on the underside" of the car and removed from the car's "exterior." This suggests that the device was not powered by the car's battery. *See United States v. Basinski*, 226 F.3d 829, 833 (7th Cir. 2000) (explaining that government bears burden of establishing by a preponderance of the evidence that warrantless search was justified).

Finally, we are not persuaded by Taylor's contention that the installation of the GPS unit was at odds with binding

---

[2] Indeed, circuits that did not have their own GPS precedent prior to *Jones* have uniformly concluded that *Knotts* is binding appellate precedent for the purpose of *Davis*'s good-faith exception, even when police officers' GPS monitoring lasted for a longer period of time. *See United States v. Baez*, 744 F.3d 30, 35 (1st Cir. 2014) (one year of GPS monitoring); *United States v. Oladosu*, 744 F.3d 36, 38 (1st Cir.) (47 days of GPS monitoring), *cert. denied*, 135 S. Ct. 97 (2014); *Aguiar*, 737 F.3d at 262 (months of GPS monitoring).

appellate precedent because law enforcement requested judicial authorization to install the device while the car was on private property. First, the record does not indicate exactly where the car was parked when the GPS unit was installed, and Taylor's failure to submit evidence on this point is reason enough to reject the argument. *See United States v. Oladosu*, 744 F.3d 36, 38–39 (1st Cir. 2014). The petition submitted to the Marion County Superior Court and the court's order granting the petition both indicate that the GPS device would be attached when the car "was either in a public place or upon private property where members of the general public would have access to [the] vehicle."

The government explained at oral argument that the reference to "private property" accessible to "the general public" meant only that the GPS unit could be attached when the car was in a shopping-mall parking lot or comparable location. This language did *not* authorize entry into Taylor's garage or his driveway. Taylor's counsel did not dispute that characterization. And at the time of these events, *Garcia* was binding appellate precedent for the proposition that attaching a GPS unit to a car parked on a public street was not a search. *See Garcia*, 474 F.3d at 996–97; *Cuevas-Perez*, 640 F.3d at 273–74. The privacy interest in a car parked in a shopping-center parking lot or similar public location is no greater than the privacy interest in a car parked on a public street.

Because *Davis*'s good-faith exception applies, we need not address the government's alternative argument that suppression was not appropriate because there was no culpable conduct by law enforcement. Nor do we consider the government's argument—raised for the first time on appeal—

that the use of the GPS device to track Taylor's car was lawful because it was supported by reasonable suspicion.

AFFIRMED.