In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-3154

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MARIO RAINONE,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 09-cr-206 — **Harry D. Leinenweber**, *Judge.*

ARGUED JANUARY 22, 2016 — DECIDED MARCH 14, 2016

Before BAUER, FLAUM, and HAMILTON, *Circuit Judges.*

FLAUM, *Circuit Judge.* Mario Rainone appeals his conviction for unlawful possession of a firearm. The Addison Police Department ("APD") arrested Rainone for residential burglary after placing a GPS device on Rainone's vehicle. Following the arrest, APD officers obtained a search warrant for Rainone's residence, in which they discovered a handgun. At trial, the jury convicted Rainone.

Rainone asks this Court to vacate his conviction on three grounds. First, he argues that the district court erred by giving the jury a joint possession instruction. Second, he argues that the exclusionary rule should apply to any evidence obtained as a result of the APD's GPS surveillance. Third, he argues that testimony that the gun was stolen was irrelevant and unfairly prejudicial. We hold that none of these arguments entitle Rainone to a new trial, and thus we affirm the conviction.

### I. Background

In December 2008, the APD began investigating Rainone in connection with a string of residential robberies. In January 2009, APD officers placed a GPS device on Rainone's vehicle without his consent or a warrant. With information gained from the GPS device, the APD arrested Rainone for burglary on February 12.[1]

After arresting Rainone, the APD obtained a warrant to search Rainone's condominium. The next day, the APD searched the two-bedroom residence and recovered a Smith & Wesson .357 caliber revolver from the top drawer of the nightstand in the condominium's southeast bedroom. Officers also recovered many of Rainone's belongings from the bedroom, including mail addressed to Rainone, photographs of Rainone, and Rainone's birth certificate and Illinois identification card.

On March 5, 2009, a federal grand jury indicted Rainone for possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g). Rainone filed a number of pretrial motions,

---

[1] Rainone pled guilty to residential burglary in Illinois state court. He was sentenced to seven-and-a-half years' imprisonment.

including a motion to dismiss the indictment and a motion to suppress evidence obtained as a result of the GPS search. The district court denied all of these motions.

On February 25, 2013, Rainone's case proceeded to trial. The only contested issue at trial was whether Rainone possessed the firearm. The government presented the testimony of three APD officers who described the search of Rainone's bedroom and the items recovered during the search.

In addition, the government presented the testimony of Michele Cozzo, Rainone's roommate. In exchange for immunity, Cozzo testified that Rainone resided in the southeast bedroom for several months prior to his arrest. Cozzo stated that, to her knowledge, no one other than Rainone stayed overnight in that bedroom. But Cozzo explained that in addition to herself and Rainone, several others, including Cozzo's mother, cousin, and ex-boyfriend, had keys to the condominium at various points in time. Further, Cozzo noted that other people, including herself, would sometimes enter Rainone's bedroom. She testified that a man named Vincent Forliano would regularly visit Rainone at the condominium. Finally, she testified that she never saw Rainone with a gun and that she never saw a gun in the condominium.

The government also presented the testimony of Bryan Thalin, the registered owner of the recovered firearm. Thalin testified that he purchased the gun in 1971 and that someone stole it from his home in October 2008. He stated that he was out of town when the gun was stolen and that he had never seen Rainone prior to trial.

Following the presentation of the evidence, the district court instructed the jury on the element of possession. Over

Rainone's objection, the court gave a joint possession instruction explaining that multiple people can share possession of an object. After deliberating, the jury convicted Rainone of possession of a firearm by a felon. Rainone filed a motion for a new trial, which the district court denied. The district court sentenced Rainone to fifteen years' imprisonment, the statutory mandatory minimum. Rainone appeals.

## II. Discussion

Rainone contends that his conviction should be vacated for three reasons: (1) the joint possession jury instruction was erroneous; (2) the district court incorrectly denied his motion to suppress; and (3) Thalin's testimony was inadmissible.

### A. Joint Possession Jury Instruction

Rainone argues that the joint possession jury instruction offered at trial was unsupported by the evidence, outdated, and overbroad. Following the presentation of the evidence, the district court instructed the jury as follows:

> More than one person may possess an object. If two or more persons share possession, that is called joint possession. If only one person possesses the object, this is called sole possession. The term "possess" in these instructions includes both joint and sole possession.

> A person may possess an object even if other individuals may have had access to a location where the possession is alleged. Also, a person may possess an object even if other individuals share the ability to exercise control over the object.

We review whether a jury instruction "fairly and accurately summarizes the law" de novo. *United States v. Erramilli*, 788 F.3d 723, 730 (7th Cir. 2015). But we review a district court's decision to give a particular instruction for an abuse of discretion. *Id.* We will reverse a conviction only if "the instructions as a whole misled the jury as to the applicable law." *United States v. Curtis*, 781 F.3d 904, 907 (7th Cir. 2015) (citation and internal quotation marks omitted).

Rainone first contends that the district court abused its discretion by offering a joint possession instruction. According to Rainone, a joint possession instruction should only be offered when there is evidence that more than one person had possession and in this case, there was no evidence of joint possession.

Rainone mischaracterizes the evidence at trial. There was substantial evidence that more than one person could have possessed the gun. Cozzo testified that others had access to Rainone's bedroom and that guests would occasionally enter the room. The fact that other people had access to, and in fact did access, Rainone's bedroom supports a reasonable inference that they could have possessed the gun. Rainone even tried to use this evidence to his advantage at trial by suggesting that other people possessed the firearm. For example, during Rainone's opening statement, he argued that the firearm was recovered from "an area that people have joint access to" and he described all of the other individuals who had access to Rainone's bedroom. The joint possession instruction properly informed the jury that Rainone could still have possessed the gun even if others had also possessed the firearm.

Additionally, we have upheld joint possession instructions in similar cases. In *United States v. Aldaco*, 201 F.3d 979, 990

(7th Cir. 2000), we held that a joint possession instruction was appropriate when police officers observed the defendant holding a gun while three other men were with him. We noted that "the fact that there were four men on the rooftop on the night in question supports the need for the instruction on joint possession." *Id.* More recently, in *United States v. Lawrence*, 788 F.3d 234, 246 (7th Cir. 2015), we held that a joint possession instruction is "necessary" when contraband is recovered from a jointly-occupied residence. Like in *Aldaco* and *Lawrence*, there was sufficient evidence to support this instruction, and thus there was no error.

Rainone also argues that the instruction was a misstatement of the law because it was outdated and overbroad. He protests that the second part of the instruction did not conform to our Circuit's pattern jury instructions.[2] Beyond noting this inconsistency, Rainone does not specify what exactly is wrong with this instruction, although he does assert that it relieves the government's burden of proof.

---

[2] The pattern jury instructions state:

> A person possesses an object if he has the ability and intention to exercise direction or control over the object, either directly or through others. [A person may possess an object even if he is not in physical contact with it [and even if he does not own it].]

> [More than one person may possess an object. If two or more persons share possession, that is called "joint" possession. If only one person possesses the object, that is called "sole" possession. The term "possess" in these instructions includes both joint and sole possession.]

7th Cir. Crim. Pattern Jury Instr. 4.13 (2012 ed.).

Of course, pattern jury instructions cannot override precedent, and the district court's instruction is amply supported by our case law. In fact, the instruction offered at trial was almost identical to the instruction we upheld in *United States v. Thornton*, 463 F.3d 693, 696 (7th Cir. 2006). And we recently upheld a similar instruction in *Lawrence*. *See* 788 F.3d 245–46. In sum, the district court did not err by giving the joint possession instruction.

### B. Motion to Suppress

Next, Rainone argues that his conviction should be vacated because the APD obtained the evidence against him as a result of an unconstitutional search. In 2009, the APD arrested Rainone after monitoring him using a GPS device attached to his vehicle. But in 2012, the U.S. Supreme Court issued its decision in *United States v. Jones*, 132 S. Ct. 945, 949 (2012), which held that attaching a GPS device to a suspect's vehicle constitutes a search under the Fourth Amendment. Rainone contends that under *Jones*, the APD's GPS monitoring constituted a search, and because the APD did not obtain a warrant or Rainone's consent, the search violated the Fourth Amendment. Thus, according to Rainone, the district court should have granted his motion to suppress and excluded the evidence obtained as a result of the APD's unconstitutional GPS surveillance.

When reviewing a denial of a motion to suppress, we review a district court's factual findings for clear error and its legal conclusions de novo. *United States v. Glover*, 755 F.3d 811, 815 (7th Cir. 2014). The exclusionary rule is a prudential doctrine designed to deter future constitutional violations by barring the introduction of evidence obtained in violation of the Constitution. *See Davis v. United States*, 131 S. Ct. 2419, 2426

(2011). Under the good-faith exception, when police "act with an objectively 'reasonable good-faith belief' that their conduct is lawful," the exclusionary rule does not apply. *Id.* at 2427 (citation omitted). In *Davis*, the Supreme Court held that the good-faith exception applies when a police officer conducts a warrantless search in reasonable reliance on binding appellate precedent that is later overturned. *Id.* at 2429.

The district court denied Rainone's motion to suppress because it held that under the good-faith exception, the exclusionary rule did not apply to any evidence obtained as a result of the GPS surveillance. The court noted that at the time of the search, Seventh Circuit precedent permitted police officers to install a GPS device on a suspect's vehicle without a warrant. *See United States v. Garcia*, 474 F.3d 994 (7th Cir. 2007). Accordingly, the district court concluded that the APD relied on this precedent in good faith and that therefore, exclusion was not warranted.

We have applied the good-faith exception to cases similar to this one. In *United States v. Brown*, 744 F.3d 474, 476–77 (7th Cir. 2014), we held that the good-faith exception applies to GPS surveillance conducted prior to the 2012 *Jones* decision. We explained that binding precedent in this Circuit, in particular *United States v. Garcia*, 474 F.3d 994 (7th Cir. 2007) and *United States v. Cuevas-Perez*, 640 F.3d 272 (7th Cir. 2011), established that the installation and use of a GPS device were not within the scope of the Fourth Amendment. *Brown*, 744 F.3d at 476–77. Therefore, "the exclusionary rule does not apply to the acquisition of GPS location data, within the Seventh Circuit, before *Jones*." *Id.* at 477. We reiterated this holding in *United States v. Taylor*, 776 F.3d 513, 517 (7th Cir. 2015): "*Brown* makes clear that *Garcia* and *Cuevas-Perez* are pre-*Jones* binding

circuit precedent holding that 'installation of a GPS device, and the use of the location data it produces, are not within the scope of the [F]ourth [A]mendment.'"

Rainone tries in vain to distinguish *Brown* and *Taylor*. He argues that because the APD was acting under Illinois jurisdiction and was investigating Rainone for state law crimes, we should not apply the federal good-faith exception or conclude that it was reasonable for the APD to rely on federal appellate precedent. Instead, Rainone asks us to apply the Illinois good-faith exception, which is narrower than its federal counterpart, and Illinois state court precedent, which did not clearly permit warrantless GPS surveillance prior to *Jones*.

This argument fails because of the fundamental principle that federal law, not state law, controls the admissibility of evidence in a federal prosecution, even if the evidence was seized by state officials and would not be admissible in state court. *United States v. Quintanilla*, 218 F.3d 674, 678–79 (7th Cir. 2000). As the Supreme Court has explained:

> In determining whether there has been an unreasonable search and seizure by state officers, a federal court must make an independent inquiry, whether or not there has been such an inquiry by a state court, and irrespective of how any such inquiry may have turned out. The test is one of federal law, neither enlarged by what one state court may have countenanced, nor diminished by what another may have colorably suppressed.

*Elkins v. United States*, 364 U.S. 206, 223–24 (1960). In other words, to determine whether evidence should be excluded

under the Fourth Amendment, we assume that the state authorized police officers to act the way they did. *See United States v. Martin*, 399 F.3d 879, 881 (7th Cir. 2005). Illinois state law is irrelevant to the admissibility of the evidence in this case.

Hence, the federal good-faith exception and Seventh Circuit precedent govern whether the exclusionary rule applies. Indeed, this principle is implicit in *Taylor*, in which we applied the federal good-faith exception, even though the surveillance was conducted by the Indianapolis Metropolitan Police Department. 776 F.3d at 514. Since *Brown* and *Taylor* make clear that the good-faith exception applies to Rainone's Fourth Amendment claim, the district court correctly denied Rainone's motion to suppress.

### C. Thalin's Testimony

At trial, Thalin testified that he was the rightful owner of the gun recovered from the condominium and that the gun was stolen from his home in October 2008. Rainone objected to Thalin's testimony in his motion *in limine* and in his motion for a new trial. Rainone argued that the testimony was irrelevant to whether he possessed the gun and unfairly prejudicial because it might cause jurors to believe that he was responsible for the theft.

The district court denied both these motions. In response to Rainone's motion *in limine*, the district court concluded that Thalin's proposed testimony was highly relevant. And in response to Rainone's motion for a new trial, the district court found that Thalin's testimony did not entitle Rainone to a new trial because neither Thalin nor the government suggested that Rainone stole the gun. On appeal, Rainone argues that

the district court erred by dismissing these motions and per-
mitting Thalin to testify that the gun was stolen.

We review a district court's evidentiary rulings for abuse
of discretion. *United States v. Causey*, 748 F.3d 310, 315–16 (7th
Cir. 2014). We afford a district court's evidentiary rulings spe-
cial deference and will reverse only if no reasonable person
could take the view adopted by the trial court. *Id.* at 316.
"Even when an abuse of discretion occurs, however, reversal
only follows if admission of the evidence affected the defend-
ant's substantial rights." *Id.* (quoting *United States v. Richards*,
719 F.3d 746, 758 (7th Cir. 2013)). That is, we will only reverse
a conviction when a reasonable juror would find the govern-
ment's case significantly less persuasive absent the improper
evidence. *Id.*

To be admissible, evidence must be relevant. Fed. R. Evid.
402. Evidence is relevant if "it has any tendency to make a fact
more or less probable than it would be without the evidence"
and that fact "is of consequence in determining the action."
Fed. R. Evid. 401. In addition, "[t]he court may exclude rele-
vant evidence if its probative value is substantially out-
weighed by a danger of … unfair prejudice … ." Fed. R. Evid.
403.

We disagree with Rainone's contention that Thalin's testi-
mony was irrelevant. Without Thalin's testimony, the jury
could have assumed that someone else who had access to Rai-
none's bedroom owned the gun, and thus placed it in the
nightstand. But the fact that Thalin, and no one else, was the
rightful owner of the firearm made it less likely that anyone
else, including the various guests at Rainone's condominium,
possessed the gun. The fact that the gun was stolen also made

Rainone himself less likely to have possessed the gun, since he too was not the lawful owner.

Further, Thalin's testimony was relevant because it largely ruled out one of the condominium's frequent guests as the possessor of the gun. Thalin testified that his gun was stolen in October 2008. And Cozzo testified that her ex-boyfriend moved out of the condominium in September 2008—one month before the gun was stolen from Thalin—and did not have a key to the condominium after that. Putting two and two together, it appears that Cozzo's ex-boyfriend could not have placed the gun in the nightstand because Thalin still had the gun in his possession when the ex-boyfriend had access to the condominium, and the ex-boyfriend did not have access to the condominium after the gun was stolen. Therefore, Thalin's testimony made it considerably less likely that Cozzo's ex-boyfriend possessed the gun and consequently, more likely that Rainone did.

We also do not think that Thalin's testimony unfairly prejudiced Rainone. Rainone argues that Thalin's testimony caused the jury to believe that Rainone stole the gun from Thalin's home and that as a result, he was unfairly prejudiced.[3] *See* Fed. R. Evid. 404(b)(1) ("Evidence of a crime,

---

[3] Rainone supports this point by arguing that Thalin's testimony could have been substituted with less prejudicial evidence, including testimony from the various guests of Rainone's condominium that they did not possess the gun and records indicating that Thalin owned the gun. According to Rainone, these alternatives "have substantially the same or greater probative value but a lower danger of unfair prejudice …." *Old Chief v. United States,* 519 U.S. 172, 183 (1997). Setting aside the fact that *Old Chief* is expressly limited to cases involving proof of felon status, *see id.* at 183 n.7, these alternative means of proof do not establish when the gun was stolen and as such would not exclude Cozzo's ex-boyfriend as the

wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.").

We are not convinced that the jury would jump to the conclusion that Rainone stole the gun. Neither Thalin nor the government expressed or implied that Rainone was responsible for the theft. In fact, Thalin testified that he had never seen Rainone before.

But even if the jury did believe that Rainone stole the gun, the risk of unfair prejudice was slight. Federal Rule of Evidence 404(b) "prohibits the admission of evidence of other crimes, wrongs, or acts for the purpose of proving a person's character or propensity to behave in a certain way." *United States v. Anzaldi*, 800 F.3d 872, 882 (7th Cir. 2015). In this case, if the jury believed that Rainone stole the gun, it could have made an impermissible propensity inference that unfairly prejudiced Rainone.

However, the jury also could have made a far more obvious inference: If Rainone stole the gun, he necessarily possessed it. In other words, if the jury believed that Rainone stole the gun, the jury could have inferred that he also possessed the gun, because these acts are, by definition, related. Unlike an impermissible propensity inference, this inference would have been proper and would not unfairly prejudice Rainone. Similarly, we routinely allow the introduction of prior bad acts for purposes other than proving propensity. *See*

---

possessor of the gun like Thalin's testimony did. In other words, these alternative means of proof do not have the same probative force as Thalin's testimony.

Fed. R. Evid. 404(b)(2) ("[E]vidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."). And because we think that this permissible inference was the far more obvious one for the jury, the risk of prejudice from Thalin's testimony was not substantial.

In sum, given the testimony's modest risk of prejudice and its considerable probative value, we conclude that the district court did not abuse its discretion by admitting it.

### III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.