FILED
United States Court of Appeals
Tenth Circuit

April 1, 2015

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

       Plaintiff - Appellee,

v.

STEVEN M. HOHN,

       Defendant - Appellant.

------------------------

AMERICAN CIVIL LIBERTIES
UNION; AMERICAN CIVIL
LIBERTIES UNION FOUNDATION OF
KANSAS,

       Amici Curiae.

No. 14-3030
(D.C. No. 2:12-CR-20003-CM-3)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, Chief Judge, **LUCERO** and **MATHESON**, Circuit Judges.

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Steven M. Hohn appeals from drug and firearms convictions arising out of his participation in a conspiracy to possess and distribute methamphetamine. He asserts errors at his trial and sentencing. We affirm.

The second superseding indictment filed in this case charged fifteen defendants, including Mr. Hohn, with participation in a conspiracy to distribute fifty grams or more of methamphetamine. Many of the conspirators reached plea agreements with the government and testified against Mr. Hohn and his co-defendant at their trial. Their testimony, along with that of the law enforcement officers who investigated Mr. Hohn's activities, described his participation in the alleged conspiracy; his possession, use, and distribution of methamphetamine; and his possession of firearms. The jury convicted Mr. Hohn on all counts charged.[1]

On appeal, Mr. Hohn raises seven issues. He contends the district court erred in denying his motions (1) to suppress evidence obtained through the placement of a GPS tracking device on his truck; (2) for a mistrial after a government witness violated an order in limine by referring to a shooting incident; and (3) to suppress evidence recovered from searches of his truck in December 2011 and April 2012. He also challenges the district court's decisions permitting the government to use a photo composite of the defendants grouped together; denying his request for specific jury

---

[1] The charges included one count of conspiracy to distribute and possess with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A); three counts of possession of a firearm by a user of a controlled substance, in violation of 18 U.S.C. § 922(g)(3); and one count of possession of an unregistered short barreled shotgun, in violation of 26 U.S.C. § 5861(d).

instructions; and finding his Sentencing Guideline offense level should be increased two levels for imported drugs.

## I.  GPS Tracking Device

Mr. Hohn filed a pretrial motion to suppress evidence the government obtained through the use of a Global Positioning System (GPS) device attached to his truck. At an evidentiary hearing on the motion, a sheriff's deputy explained his belief that although a warrant was required to hard-wire a GPS device to a vehicle,[2] no warrant was required to install a "slap-on," battery-powered GPS device which could be attached magnetically to the vehicle.

Acting on this understanding, law enforcement officers attached a battery-powered GPS device to Mr. Hohn's truck beginning on July 24, 2011.  They did not obtain a search warrant for the device.  Over the course of the investigation, the batteries in the device repeatedly failed and it was necessary to replace them on several occasions.  Because the battery replacement had to be accomplished surreptitiously and required knowledge of the truck's whereabouts, GPS tracking was often unavailable for extended periods of time while the tracking device was unpowered.  In all, officers were able to track the whereabouts of Mr. Hohn's truck for an estimated total of 62 days between July 24 and November 9, 2011.

---

[2]    Hard-wiring involves connecting the GPS device to a vehicle's battery to supply it with power.

On November 10, 2011, using information they had received from the battery-operated GPS device and from other sources, the officers obtained a warrant to install hard-wired GPS devices to the truck and to another of Mr. Hohn's vehicles. But the officers did not have an opportunity to attach a hard-wired device to the truck. They finally removed the battery-powered GPS tracking device on December 23, 2011, when they searched the truck pursuant to a warrant.

Mr. Hohn sought to suppress the GPS information obtained from the warrantless use of the GPS tracking device, as well as all information the government subsequently obtained in reliance on the GPS data. The district court concluded that the placement of the device qualified as a warrantless search, citing the Supreme Court's decision in *United States v. Jones*, 132 S. Ct. 945 (2012), which was issued after the GPS tracking occurred in this case. *See id.* at 949 (holding that "the Government's installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a 'search.'" (footnote omitted)). But it further determined that even if the search was unreasonable for Fourth Amendment purposes, the exclusionary rule did not require suppression of the evidence because the officers involved had acted in good faith. It therefore denied the motion to suppress.

The exclusionary rule is "a deterrent sanction that bars the prosecution from introducing evidence obtained by way of a Fourth Amendment violation." *Davis v. United States*, 131 S. Ct. 2419, 2423 (2011). Under the so-called good-faith

exception to the exclusionary rule, "searches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the . . . rule." *Id.* at 2423-24. "Whether the 'good faith exception' . . . should be applied is a question of law, subject to de novo review by this Court." *United States v. Burgess*, 576 F.3d 1078, 1095 (10th Cir. 2009).

We will assume, for purposes of argument, that warrantless use of the battery-powered GPS device was an unreasonable search for Fourth Amendment purposes.[3] We must next consider whether the good-faith exception applies. Mr. Hohn contends that the exception does not apply because at the time the officers employed the battery-powered GPS device there was no binding appellate precedent in this circuit from which they could reasonably have concluded their conduct was lawful.

We disagree. For purposes of the good-faith exception, "it is self-evident that Supreme Court decisions are binding precedent in every circuit." *United States v. Katzin*, 769 F.3d 163, 173 (3d Cir. 2014) (en banc), *cert. denied*, 2015 WL 732186 (U.S. Feb. 23, 2015) (No. 14-7818). At the time the officers employed the

---

[3]      Amici urge us to decide whether the officers' warrantless use of the GPS tracking device was unreasonable, a question left open in *Jones*, 132 S. Ct. at 954 (declining to determine whether search occasioned by use of GPS device was reasonable). We find it unnecessary to do so. *See United States v. Leon*, 468 U.S. 897, 924-25 (1984) (noting that courts have discretion to determine in what order they decide issues involving the good-faith exception).

battery-powered GPS device, they could reasonably have relied upon at least two prior Supreme Court decisions to provide authority for their actions.

In *United States v. Knotts*, 460 U.S. 276, 277 (1983), officers investigating the defendant's role in manufacturing methamphetamine placed a "beeper" (a form of transmitter that provided radio signals that could be tracked) in a five-gallon drum of chloroform purchased by one of his co-defendants. Officers then followed a car into which the chloroform had been placed, using both virtual surveillance and the beeper's signals. The officers followed the car until it reached the defendant's cabin where, after obtaining a warrant to search the premises, they discovered a meth lab.

The Supreme Court upheld the warrantless monitoring of the beeper, which led the officers to the cabin. The Court noted that the "surveillance conducted by means of the beeper in this case amounted principally to the following of an automobile on public streets and highways," and that "[a] person travelling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another." *Id.* at 281. Observing that "[n]othing in the Fourth Amendment prohibited the police from augmenting the sensory faculties bestowed upon them at birth" with the technological enhancement provided by the beeper, *id.* at 282, the Court concluded that "there was neither a 'search' nor a 'seizure' within the contemplation of the Fourth Amendment," *id.* at 285.

In *United States v. Karo*, 468 U.S. 705, 708 (1984), a Drug Enforcement

Administration (DEA) agent learned through an informant that the defendants had

ordered 50 gallons of ether. With the informant's consent, DEA agents substituted

their own can containing a beeper for one of the cans of ether used to fill the order.

Using the beeper and other surveillance methods, the agents tracked the ether

shipment for over four months as the defendants moved it to several locations and

ultimately to a private residence, where cocaine and laboratory equipment were found

and seized.

The Supreme Court held that neither the placement of the beeper into the can,

nor the can's transfer to the defendants, constituted a search or seizure. The Court

reasoned that "[a]lthough the can may have contained an unknown and unwanted

foreign object," its placement in the container amounted at most to a "technical

trespass" to the defendants' possessory interest, that was "only marginally relevant to

the question of whether the Fourth Amendment [had] been violated." *Id.* at 712-13.

The officers in this case could reasonably have relied on the Court's holdings

in *Knotts* and *Karo* to conclude that their warrantless placement of the slap-on,

battery-powered GPS device, and their use of the device to monitor the movements of

Mr. Hohn's truck on public streets and highways, did not violate the Fourth

Amendment.[4] Thus, the district court properly applied the good-faith exception to

---

[4]    Amici argue that we should reject *Knotts* and *Karo* as grounds for reasonable
reliance, for two reasons. First, they argue these cases deal with "decades-old
(continued)

- 7 -

their conduct.  We also note that several of our sister circuits have held the good-faith

exception applicable under similar circumstances.  *See, e.g.*, *United States v. Holt*,

777 F.3d 1234, 1258-59 (11th Cir. 2015); *United States v. Taylor*, 776 F.3d 513,

517-19 (7th Cir. 2015) (per curiam); *Katzin*, 769 F.3d at 173-77 (en banc); *United*

*States v. Stephens*, 764 F.3d 327, 336-39 (4th Cir. 2014); *United States v. Fisher*,

745 F.3d 200, 203-06 (6th Cir.), *cert. denied*, 135 S. Ct. 676 (2014); *United States v.*

---

technology" and could not reasonably have been extended to GPS tracking, "a
technology not yet in existence when they were decided."  Amici Br. at 20-21.  But
the GPS devices involved in this case served essentially the same function as the
beepers used in *Knotts* and *Karo*:  both permitted officers to determine the location
and movements of a vehicle traveling on public roads by use of information
transmitted from an electronic device associated with the vehicle.  It would not have
been unreasonable for officers to extend the broad rationale of the earlier cases to the
more sophisticated GPS technology which, like a beeper, "augment[ed] the sensory
faculties bestowed upon them at birth."  *Knotts*, 460 U.S. at 282; *see also Katzin*,
769 F.3d at 176 ("[T]he technological distinctions between the beepers of yesteryear
and the GPS device used herein are irrelevant.").

    Amici also note that the *Jones* court did not find it necessary to overrule
*Knotts* and *Karo*, which shows that those cases can be distinguished from the facts
here and thus should not have been relied upon as binding precedent in this case.
Unlike the GPS device involved here and in *Jones*, they argue, the beepers involved
in *Knotts* and *Karo* "were not installed pursuant to a physical trespass, were not used
for long-duration tracking, and provided only limited, imprecise information."  *Id.* at
22.  The question is whether such potential distinctions precluded the officers'
reasonable reliance, pre-*Jones*, on *Knotts* and *Karo*.  We conclude that they did not.

    First, in *Karo*, the Supreme Court had stated broadly that "a physical trespass
is only marginally relevant to the question of whether the Fourth Amendment has
been violated."  *Karo*, 468 U.S. at 712-13.  Second, the device in *Karo* was used for
over four months, not an appreciably shorter time than the GPS device used in this
case.  *See id.* at 708-10.  Finally, the alleged greater availability or reliability of GPS
data did not provide a reasonable basis for distinguishing *Knotts* and *Karo*,
particularly where the battery-powered GPS device used in this case frequently failed
and the government found it necessary to rely on other methods of tracking
Mr. Hohn's whereabouts such as pole cameras and visual surveillance.

*Aguiar*, 737 F.3d 251, 261-62 (2d Cir. 2013), *cert. denied*, 135 S. Ct. 400 (2014); *United States v. Sparks*, 711 F.3d 58, 62-68 (1st Cir.), *cert. denied*, 134 S. Ct. 204 (2013); *United States v. Andres*, 703 F.3d 828, 834-35 (5th Cir. 2013); *United States v. Pineda-Moreno*, 688 F.3d 1087, 1090-91 (9th Cir. 2012).

## II. Reference to Shooting Incident

The district court granted the defendants' motion in limine to exclude evidence of an alleged shooting in Missouri that did not involve Mr. Hohn. But at trial, as the government was questioning a witness concerning the contents of a notebook found in her bedroom, the witness identified names in the notebook as "names of the people that were involved in the shootout in Kingdom City." R., Vol. 2 at 1305.

The defendants immediately moved for a mistrial based on the witness's reference to the Missouri shooting. The district court determined that the government had inadvertently elicited the comment. As a curative matter, it called each of the jurors individually into the courtroom and informed each juror that the statement was being stricken from the record and that they should disregard it. The court also reminded the jurors that the names mentioned in the notebook were not those of the defendants. Finally, it asked each juror three questions: whether they could disregard the statement as instructed; whether they were still able to be fair and impartial to all parties in the case; and whether they were still able to decide the case based solely on the evidence admitted at trial and the court's instructions. Each juror

answered all three questions affirmatively. The district court then denied the motion for mistrial.

We review the district court's denial of the motion for mistrial for an abuse of discretion. *United States v. Morgan*, 748 F.3d 1024, 1039 (10th Cir.), *cert. denied*, 135 S. Ct. 298 (2014). Where inadmissible evidence is admitted, "a cautionary instruction is ordinarily sufficient to cure any alleged prejudice to the defendant and declaring a mistrial is only appropriate where a cautionary instruction is unlikely to cure the prejudicial effect of an error." *Id.* (internal quotation marks omitted). Here, the shooting reference was unintentionally elicited, and the district court very carefully instructed and questioned each juror about the reference, satisfying itself that "the character of the testimony [was not] such that it [would] create so strong an impression on the minds of the jurors that they [would] be unable to disregard it in their consideration of the case, although admonished to do so." *Id.* at 1040. Denial of the motion for a mistrial was therefore not an abuse of discretion.

### III.  Denial of Motions to Suppress Results of Truck Searches

Law enforcement officers searched Mr. Hohn's 1997 Ford F150 truck twice, on December 23, 2011, and on April 20, 2012. The district court denied his motions to suppress the evidence found during the searches. "In reviewing the denial of a motion to suppress, we review the district court's findings of fact for clear error, considering the evidence in the light most favorable to the government." *United States v. Salas*, 756 F.3d 1196, 1200 (10th Cir. 2014). "We review the district

- 10 -

court's ultimate determination of reasonableness under the Fourth Amendment de novo." *Id.*

**December 23, 2011 search**. On December 23, 2011, officers searched a residence in Gardner, Kansas pursuant to a state-court search warrant. At the time of the search Mr. Hohn's 1997 Ford F150 truck was parked in the driveway and he was on the premises. Mr. Hohn and his girlfriend shared a bedroom at the residence and a significant number of his personal possessions were found there. The search warrant affidavit recited that Mr. Hohn's truck was known to have been used in connection with his drug trafficking activities, that the truck was often in the driveway of the residence, and that the Gardner address was known to be Mr. Hohn's primary and only residence. When he was later arrested, Mr. Hohn gave the Gardner address to law enforcement as his address.

Officers seized firearms and other evidence they found in Mr. Hohn's truck. He moved to suppress the evidence, reasoning that the search and seizure of his truck exceeded the scope of the warrant because when they seized the items the officers knew he was not the actual owner of the premises being searched.

The scope of a search warrant for a premises "include[s] those automobiles either actually owned or under the control and dominion of the premises owner or, alternatively, those vehicles which appear, based on objectively reasonable indicia present at the time of the search, to be so controlled." *United States v. Gottschalk*, 915 F.2d 1459, 1461 (10th Cir. 1990). Mr. Hohn contends that because the officers

knew he was not the legal owner of the premises—he merely lived there—his truck was not within the scope of the warrant.

Mr. Hohn's reading of *Gottschalk* is unnecessarily narrow, and could lead to untoward results. It could preclude the search of a renter's vehicle, for example, where the renter occupied all or part of the premises to be searched and was the target of the search but did not hold fee simple title to the premises. While *Gottschalk* rejects a broad authority to search any vehicle located within the curtilage of a premises to be searched—it would, for example, prevent officers from searching a guest's vehicle that was incidentally present within the curtilage at the time of the search, *see id.* at 1460-61—its holding and rationale are sufficiently broad to encompass vehicles actually or apparently owned or controlled by long-term residents who exercise possessory ownership of the premises. Mr. Hohn was thus properly treated as an "owner" of the Gardner residence and the district court properly denied the motion to suppress items found during the search of his truck.

**April 20, 2012 search**. In December 2010, members of the conspiracy allegedly killed Greg Price, who owed a drug debt. The homicide was not included among the charges in this case. The district court granted the defendants' motion to exclude any evidence regarding the killing at trial.

After the homicide, Mr. Price's body was placed inside a refrigerator and loaded into Mr. Hohn's truck. The improvised casket was transported to and left at a

remote location. There it remained, unknown to law enforcement, for approximately sixteen months.

On April 19, 2012, as a result of their investigation, officers learned of Mr. Price's death and the location of his body. They obtained a search warrant for the property where it was located. There, they discovered what was left of the body inside the refrigerator. They also learned that Mr. Hohn's truck had been used to transport the body to its resting place.

By the time officers learned of the homicide and the role Mr. Hohn's truck played in disposal of the body, Mr. Hohn was in jail. His girlfriend had control of the truck, which was parked in Miami County, Kansas. Officers seized the truck on April 19 and towed it to the Johnson County Criminalistics Laboratory in Olathe, where it was stored in a secured garage. The next day, a deputy sheriff obtained a search warrant for the truck, seeking any trace evidence concerning the homicide. The truck was searched, but little or no evidence was recovered.

Mr. Hohn complains that the truck was seized without a warrant and that the evidence used to establish probable cause to search it was stale. He also argues that it was improper to seize the truck in one county and transport it to another county where the search warrant was obtained.

Mr. Hohn's challenge to this search is meritless. Evidence of Greg Price's alleged killing was specifically excluded from his trial. In any event Mr. Hohn points to no evidence found during the April 20 search of his truck that should have been

suppressed.[5]  Under the circumstances, any alleged error involving the search of

Mr. Hohn's truck was harmless beyond a reasonable doubt.

### IV.  Use of Composite Photo of Defendants

During the trial, over the defendants' objections, the government displayed a

composite set of photos of the codefendants, including Mr. Hohn.  The exhibit was

intended to aid the witnesses and jury as it helped identify the various codefendants

named in the indictment.  The district court found that the composite chart of photos

was not unduly prejudicial and could be used as a demonstrative exhibit.

Absent abuse which clearly prejudices the defendant, the district court has

discretion to permit the display of demonstrative exhibits during trial.  *United States

v. Downen*, 496 F.2d 314, 320 (10th Cir. 1974).  We discern no abuse of discretion

here.  The district court offered to give a limiting instruction concerning the

composite photo chart, but Mr. Hohn apparently failed to request such an instruction.

In view of the evidence at trial linking him to the codefendants, Mr. Hohn was not

unfairly prejudiced by use of the composite photo chart.

---

[5]  The government did present evidence concerning Greg Price's murder at Mr. Hohn's sentencing.  But it relied on testimony about the murder and the cover-up, and evidence recovered as the result of a search warrant for the premises where the body was found, rather than on anything found during the search of Mr. Hohn's truck.

## V. Jury Instruction

Mr. Hohn requested that the district court give the following instruction to clarify that his participation in the conspiracy could not be inferred from his mere association with the alleged co-conspirators:

> To render evidence of the acts or declarations of an alleged conspirator admissible against an alleged co-conspirator, the existence of the conspiracy must be shown and the connection of the latter therewith established by independent evidence. The existence of the conspiracy cannot be established against an alleged conspirator by evidence of acts or declarations of his alleged co-conspirators, done or made in his absence. Evidence which creates a mere suspicion of guilt is not enough. *Guilt may not be inferred from mere association.*

R., Vol. 1 at 204 (emphasis added) (Co-defendant's requested instruction joined by Mr. Hohn; *see id.* at 210-11).

We review the district court's refusal to submit a requested instruction for an abuse of discretion. *United States v. Smalls*, 752 F.3d 1227, 1245 (10th Cir. 2014). "'Discretion' comes into play in that the district judge has substantial discretion in wording the instructions, as long as they adequately present the law and the issues." *United States v. Wolny*, 133 F.3d 758, 765 (10th Cir. 1998). In determining whether the law was adequately presented, we review de novo the instructions as a whole. *Id.*

The instructions here adequately informed the jury that it should not convict Mr. Hohn of conspiracy based on his mere association with other persons engaged in criminal activity. *See, e.g.*, Instruction No. 17, R., Vol. 1 at 250 ("Mere similarity of conduct among various persons, and the fact that they may have associated with each other, and may have assembled together and discussed common aims and interests,

- 15 -

does not necessarily establish proof of the existence of a conspiracy."). We discern no abuse of discretion in the district court's refusal to submit Mr. Hohn's requested instruction.

## VI.  Increased Offense Level for Imported Drugs

In calculating Mr. Hohn's advisory Guideline sentence, the district court enhanced his offense level on the conspiracy charge by two levels because it found the methamphetamine he distributed was imported. Section 2D1.1(b)(5) of the Guidelines provides that "[i]f (A) the offense involved the importation of . . . methamphetamine or the manufacture of . . . methamphetamine from listed chemicals that the defendant knew were imported unlawfully, and (B) the defendant is not subject to an adjustment [for a mitigating role], increase by **2** levels." U.S.S.G. Manual § 2D1.1(b)(5) (2013).[6] Mr. Hohn challenges this enhancement, contending that "[t]he Government offered no evidence that the methamphetamine [he] distributed . . . actually came from Mexico." Aplt. Br. at 28.

"We review de novo any legal questions in a district court's application of the Guidelines, and we review any relevant factual findings for clear error, giving due deference to the district court's application of the guidelines to the facts." *United States v. Serrato*, 742 F.3d 461, 468 (10th Cir.) (internal quotation marks omitted), *cert. denied*, 134 S. Ct. 2739 (2014). The government need only prove a sentencing

---

[6]     "The § 2D1.1(b)(5) enhancement previously was found at § 2D1.1(b)(4)." *United States v. Biao Huang*, 687 F.3d 1197, 1205 n.4 (9th Cir. 2012).

enhancement by a preponderance of the evidence. *United States v. Gambino–Zavala*, 539 F.3d 1221, 1228 (10th Cir. 2008).

The government met its burden here. Throughout the trial, in the presentence report, and at sentencing, witnesses testified that methamphetamine distributed in the conspiracy was obtained from individuals of Mexican origin or descent. Although this evidence alone would have been insufficient to meet the government's burden to show that the methamphetamine was imported from Mexico, at sentencing a sheriff's deputy testified that in his opinion the methamphetamine was of Mexican origin. He based this opinion on three factors: (1) methamphetamine is manufactured in larger quantities or batches in Mexico than in the United States, often in Mexican "super labs"; (2) Mexican methamphetamine tends to be of a higher purity than methamphetamine manufactured in the United States; and (3) when methamphetamine is imported from Mexico into the United States, individuals will add a filler or cut it before distributing it, and the meth distributed in this case had been cut. *See* R., Vol. 2 at 2583-84, 2588. The deputy's observations concerning the purity and admixture of the methamphetamine were supported by the analysis of the DEA chemists who testified in this case. The district court properly applied the importation enhancement to Mr. Hohn's base-offense level.

**CONCLUSION**

The judgment of the district court is affirmed.

Entered for the Court

Mary Beck Briscoe
Chief Judge