**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 30, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

WILLIAM D. MITCHELL,

    Defendant - Appellant.

No. 15-3006
(D.C. No. 2:13-CR-20051-CM-1)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **GORSUCH**, and **PHILLIPS**, Circuit Judges.

What should happen to evidence the government secured using a GPS tracking device placed on a defendant's car without a warrant but before *United States v. Jones*, 132 S. Ct. 945 (2012), opened the possibility a warrant might be required? That's the question we face in this case. Like the district court, we conclude that *Davis v. United States*, 564 U.S. 229 (2011), permits the government to use at trial the evidence the tracking device yielded.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Our case began back in September 2011 when a confidential informant told authorities that William Mitchell was a drug dealer. Acting on this tip, police worked with the informant to set up a controlled buy. But Mr. Mitchell was easily spooked and at first failed to show. So the officers tried a new tactic. They found Mr. Mitchell's car parked on a public street and, without a warrant, attached a GPS device to its bumper. That's when the officers' luck turned. They used the GPS device to track Mr. Mitchell's movements and, some weeks later and at a time they were confident he had just purchased drugs for resale, they pulled him over and eventually found drugs. In time, a federal jury convicted Mr. Mitchell of drug distribution charges. And now on appeal he asks us to reverse that conviction on the basis that any evidence secured using the GPS device should have been excluded from his trial.

But even assuming (without deciding) that a warrant would be required for the type of GPS surveillance that took place here, exclusion is not the appropriate remedy. There was a time, of course, when the Supreme Court "treated identification of a Fourth Amendment violation as synonymous with application of the exclusionary rule." *Arizona v. Evans*, 514 U.S. 1, 13 (1995). But eventually the Court came to the judgment that this "reflexive application" of the exclusionary rule "exact[ed] a heavy toll on both the judicial system and society at large." *Davis*, 564 U.S. at 237-38 (internal quotation marks omitted). It "require[d] courts to ignore reliable, trustworthy evidence bearing on guilt or

innocence" and operated "to suppress the truth and set the criminal loose in the community without punishment." *Id.* at 237. A high price for a "judicially created remedy" not mentioned by the Constitution and meant only as a practical deterrent to future Fourth Amendment violations. *United States v. Calandra*, 414 U.S. 338, 348 (1974). And so, in time, the Supreme Court came to restrict the exclusionary rule's operation to those cases in which it "most efficaciously serve[s]" that deterrence goal, *id.*, explaining that suppression is a "bitter pill" society must swallow only as a "last resort," *Davis*, 564 U.S. at 237 (internal quotation marks omitted).

How do we know when we've reached the end of the road and exclusion becomes the only recourse? The Court has suggested the task requires balancing competing social interests — examining the "deterrence benefits of suppression" in relief against its heavy social costs. *Id.* But trying to weigh these incommensurate goods on a grand societal scale can be a difficult business. *See generally United States v. Nicholson*, 721 F.3d 1236, 1256 (10th Cir. 2013) (Gorsuch, J., dissenting). So the Court has more recently offered a bit more guidance. "[T]he deterrence benefits of exclusion," it has now explained, "'var[y] with the culpability of the law enforcement conduct' at issue." *Davis*, 564 U.S. at 238 (quoting *Herring v. United States*, 555 U.S. 135, 143 (2009)). Only when the police engage in "deliberate, reckless, or grossly negligent conduct" will the deterrent value of exclusion tend to outweigh the resultant

-3-

costs. *Herring*, 555 U.S. at 144.  By contrast, and in the usual case, "when the police act with an objectively reasonable good-faith belief that their conduct is lawful, or when their conduct involves only simple, isolated negligence, the deterrence rationale loses much of its force and exclusion cannot pay its way." *Davis*, 564 U.S. at 238 (citations and internal quotation marks omitted).

Applying that standard to this case we see no reason to believe the officers acted less than reasonably.  After all, when they attached the GPS device to Mr. Mitchell's car in 2011, this circuit's precedent seemed to suggest the officers needed no warrant.  Decades ago, the Tenth Circuit held that officers could attach an "electronic tracking device" to a car and monitor it without a warrant so long as they had probable cause.  *United States v. Shovea*, 580 F.2d 1382, 1387-88 (10th Cir. 1978).  Five years later and still long before the events here, the Supreme Court went further still, holding the Fourth Amendment was not implicated when police tracked a defendant's car by monitoring an electronic beeper secreted in a five-gallon drum that had been sold to the defendant.  *United States v. Knotts*, 460 U.S. 276, 277, 281-85 (1983).  And then it went further still, holding that neither the installation of a beeper inside a can (with the owner's consent) nor the transfer of that can to an unwitting target constituted a "search" or "seizure" within the meaning of the Fourth Amendment.  *United States v. Karo*, 468 U.S. 705, 711-13 (1984).

To be sure, yesterday's beepers are a far cry from today's GPS devices. *See Jones*, 132 S. Ct. at 951-52; *id.* at 955-56 (Sotomayor, J., concurring); *id.* at 963-64 (Alito, J., concurring in the judgment). Neither is there any question that the five weeks spent tracking Mr. Mitchell's car far outstripped the hours of surveillance at issue in *Knotts* and *Karo*. *See* 460 U.S. at 279; 468 U.S. at 708. But what's not obvious is that these distinctions would have obviously mattered to a reasonable officer in 2011. In basic function beepers and GPS devices are alike — they permit the monitoring of vehicular movements on public streets. *See, e.g.*, *United States v. Katzin*, 769 F.3d 163, 175-76 (3d Cir. 2014) (en banc); *United States v. Aguiar*, 737 F.3d 251, 261-62 (2d Cir. 2013). The bright-line drawn in *Knotts*, moreover, appeared to render the length of the surveillance immaterial for Fourth Amendment purposes. *United States v. Sparks*, 711 F.3d 58, 67 (1st Cir. 2013). In light of this, we think a reasonable officer could be forgiven for thinking, prior to *Jones*, that existing appellate precedent authorized him to install and monitor a GPS device on a private vehicle without a warrant. *See United States v. Hohn*, 606 F. App'x 902, 905-07 (10th Cir. 2015) (holding officers relied in good faith on *Knotts* and *Karo* when warrantlessly tracking vehicle with GPS device).

If this analogous and binding appellate precedent weren't reason enough to think the officers here tried in good faith to comply with the law's demands, consider too how many other circuits had already specifically and expressly

approved of the warrantless use of GPS tracking devices. Of the five circuits that had considered the question before September 2011, four had said no warrant was required — either because the surveillance did not constitute a "search" within the meaning of the Fourth Amendment or because some degree of suspicion would suffice to render the search "reasonable" even without a warrant. *See generally United States v. Hernandez*, 647 F.3d 216, 220-21 (5th Cir. 2011); *United States v. Garcia*, 474 F.3d 994, 996-98 (7th Cir. 2007); *United States v. Marquez*, 605 F.3d 604, 609-10 (8th Cir. 2010); *United States v. Pineda-Moreno*, 591 F.3d 1212, 1216-17 (9th Cir. 2010). Yes, this circuit had not yet addressed the question and one circuit had gone the other way. *See United States v. Maynard*, 615 F.3d 544, 555-56 (D.C. Cir. 2010). But the Supreme Court had agreed to review that outlying circuit decision by September 2011. *See United States v. Jones*, 131 S. Ct. 3064 (2011) (mem.). And a reasonable officer could have taken the Court's decision to review the only contrary authority as a sign it was prepared to overrule it.

Under these circumstances, and even assuming the officers in our case violated the Fourth Amendment by failing to obtain a warrant, we can attribute to them no more than simple negligence. Otherwise we'd have to condemn them for conforming their behavior to the vision of four rather than the voice of one — and to demand of them a degree of legal foresight even four out of five circuit courts of appeal could not muster. That much we're not prepared to do. *Cf. United*

*States v. Brown*, 744 F.3d 474, 478 (7th Cir. 2014) ("One can doubt that much deterrence is to be had from telling the police that they are not entitled to rely on decisions issued by several circuits, just because the circuit covering the state in which an investigation is ongoing lacks its own precedent."). Neither, it seems, is any other circuit, for every one to have faced a case like ours has resolved it much as we do. *See Hohn*, 606 F. App'x at 907 (collecting cases); *United States v. Robinson*, 781 F.3d 453, 458-60 (8th Cir. 2015).

Affirmed.

ENTERED FOR THE COURT


Neil M. Gorsuch
Circuit Judge