In the

# United States Court of Appeals

### For the Seventh Circuit

No. 13-3095

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

SRINIVASA ERRAMILLI,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:11-cr-00778-1 — **Joan Humphrey Lefkow**, *Judge.*

ARGUED SEPTEMBER 10, 2014 — DECIDED JUNE 10, 2015

Before WOOD, *Chief Judge*, and EASTERBROOK and TINDER,
*Circuit Judges.*

TINDER, *Circuit Judge.* Srinivasa Erramilli has been caught
three times fondling unsuspecting women on airplanes.
Once in 1999 and once in 2002, he took a window seat be-
hind a young woman, and when she appeared to fall asleep,
he reached forward and fondled one of her breasts. Then, in
2011, he took a middle seat between a woman and her hus-
band (who was coincidentally blind in the eye closest to

him), and when the woman appeared to fall asleep, he fon-
dled her inner thigh. It is this latter incident that led to Er-
ramilli's conviction for abusive sexual contact in this case. At
trial, the government introduced evidence of his prior acts
pursuant to Federal Rule of Evidence 413. On appeal, Erra-
milli argues that his prior acts should have been excluded
and that, even if they were properly admitted, the jury in-
struction on their use was improper. We disagree; therefore,
we affirm.

## I.    BACKGROUND

In June 2011, Susan and Vincent Domino took a trip to
Las Vegas for their thirty-fourth wedding anniversary. On
June 14, their trip came to an end, and they boarded their
return flight to Chicago on Southwest Airlines. Because of
Southwest's open boarding policy, the Dominos were free to
choose their seats. Vincent is blind in his right eye, so the
Dominos generally sit on the right side of the plane, allow-
ing him to see the flight attendants when drinks are served.
This time was no exception: the Dominos sat toward the
back of the plane, on the right side of the center aisle. Vin-
cent took the aisle seat, as he thought he might need to use
the restroom during the flight. Susan was tired and thought
she might be getting sick; she chose the window seat so she
could lay her head against the side of the plane and get some
rest.

Meanwhile, Erramilli had been in Las Vegas on business
and had booked the same return flight to Chicago. The flight
was full, and Erramilli was the last to board, so he took the
only seat available to him: the seat between the Dominos. By
that time, Susan had crossed her left leg over her right and
was leaning against the window. She remained in that posi-

tion as the plane took off and eventually she succeeded in falling asleep. At some point after takeoff, however, she felt something brush against her leg, and she jolted awake. Not seeing anything suspicious, she assumed the contact was accidental, so she moved a little closer to the window and went back to sleep. A little later, Susan was awakened once more when she felt some pressure on her upper thigh, "like somebody was kneading it." She turned, bumped Erramilli's knee, and said, "Oh, excuse me." Erramilli said nothing in response; instead, he folded his arms on the seatback tray in front of him and put his head down. A little drowsy and still unsure of what was happening, Susan curled up again and tried to go back to sleep.

As the plane approached Chicago, Susan ordered a cup of coffee, then she leaned back in her seat and closed her eyes. She began to wonder whether someone had been touching her leg during the flight, and she opened her eyes to find that Erramilli had turned his legs toward her. Thinking that was strange, she closed her eyes again for a moment and then reopened them. At that point, Erramilli reached his left hand across his body and, while concealing it with a newspaper, slid his hand up her shorts and squeezed her inner thigh. Then, as Susan put it, she "lost control."

Susan turned and struck Erramilli, then she called him a "pig" and a "pervert." He asked what she was doing, and she responded, "You know what you were doing." Erramilli said, "I don't know what you are talking about." Then, Susan told Vincent what happened and asked for the authorities. Erramilli pleaded with them not to call the authorities, saying that his wife and two children were waiting for him and that they could "settle this in a civil matter." By this

time, he was sweating profusely. He also said something to the effect of, "I thought you liked it." Eventually, Vincent pressed the flight attendant call button, but the plane was already descending into Chicago, and the flight attendants could not immediately come to their aid. As soon as the plane arrived at the gate, Erramilli got up and tried to exit, but Vincent blocked him in. Then, a flight attendant arrived and escorted the three of them into the jetway, where they met with officers from the Chicago Police Department. Susan told her story to the police, and later, the FBI.

On November 1, 2011, a grand jury returned an indictment against Erramilli, charging him with two counts of abusive sexual contact under 18 U.S.C. § 2244, which applies to acts committed on aircraft pursuant to 49 U.S.C. § 46506(1). Under the statute, "the term 'sexual contact' means the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(3). The first count of the indictment charged Erramilli under 18 U.S.C. § 2244(a)(2), based on the contact that occurred while Susan was asleep. However, the government voluntarily dismissed that count during trial, after concluding that there was insufficient evidence that Erramilli made contact with Susan's inner thigh (or any other area listed in the statute) while she was asleep. The second count charged Erramilli under 18 U.S.C. § 2244(b), which proscribes "knowingly engag[ing] in sexual contact with another person without that other person's permission." This charge was based on the contact that occurred after Susan awoke but without her permission.

The government filed a motion *in limine* under Federal Rule of Evidence 413, asking the district court to admit evidence of two prior sexual assaults committed by Erramilli. In response, Erramilli argued that such evidence should be excluded under Federal Rule of Evidence 403 because its probative value was substantially outweighed by the danger of unfair prejudice. The district court disagreed and granted the government's motion. However, the court cautioned that "the proper focus of the trial must be the underlying conduct that supports the instant offense, rather than the prior offenses," and it directed the government to "limit its presentation to evidence that is necessary to convey the essential facts underlying the two prior offenses" and "limit emotional testimony from the prior victims."

At trial, the government presented testimony regarding Erramilli's prior acts. First, one of his prior victims testified that on August 30, 1999, when she was twenty-seven years old, she was seated next to a window on a flight from Detroit to Chicago. At some point during the flight, she placed her right arm on the armrest and leaned her head against the window, hoping to take a nap. Then, she felt a hand reach between her right arm and her body, grazing the side of her breast. At first, she thought it must have been a child playing, but then it happened again, and she grew suspicious. Then it happened a third time, only the contact with her breast was more substantial and obviously intentional. This time, she grabbed the hand and turned around to see who it was. It was Erramilli. The woman took a few minutes to process things, then she went to the back of the plane to tell the flight attendants what happened. Ultimately, Erramilli pled guilty to an Illinois battery charge.

Next, the government presented the testimony of a former FBI agent who interviewed Erramilli following an incident that occurred on a flight from San Jose to Detroit on February 6, 2002. During the interview, Erramilli explained that although he had been upgraded to first class, he took a window seat behind an eighteen-year-old woman in coach. The woman was initially resting her head on a pillow positioned against the window, but eventually she removed the pillow. At that point, Erramilli reached forward to touch her breast. The woman clamped down on his arm with her elbow, which Erramilli took to mean that she wanted him to touch her. Erramilli admitted to the FBI agent that he was excited when he touched the woman's breast and that he had "a little bit of an erection." Ultimately, he pled guilty to abusive sexual contact in the U.S. District Court for the Eastern District of Michigan.

After the parties rested and made their closing arguments, the court instructed the jury on the law governing the case. With respect to the testimony regarding Erramilli's prior acts, the court instructed the jury as follows:

> You have heard testimony that the defendant committed crimes other than the ones charged in the indictment. Before using this evidence, you must decide whether it is more likely than not that the defendant did the crimes that are not charged in the indictment. If you decide that he did, then you may consider this evidence for the following purposes: Motive, intent, knowledge, absence of mistake, lack of accident, and propensity to commit sexual assault. Keep in mind that the defendant is on

> trial here for abusive sexual contact, not for the
> other crimes.

After deliberations, the jury returned a guilty verdict on the sole remaining count of abusive sexual contact under 18 U.S.C. § 2244(b). Erramilli was sentenced to nine months' imprisonment and one year of supervised release.

## II.    DISCUSSION

On appeal, Erramilli argues that the district court abused its discretion in admitting the evidence of his prior sexual assaults and that the court's jury instruction on the use of those assaults was improper. We address each argument in turn.

### A. ADMISSIBILITY

"A district court's interpretation of the rules of evidence is reviewed *de novo*, and its decision to admit or exclude evidence is reviewed for an abuse of discretion." *United States v. Foley*, 740 F.3d 1079, 1086 (7th Cir. 2014). In this case, the district court admitted Erramilli's prior sexual assaults under Federal Rule of Evidence 413.

Generally, evidence of prior crimes cannot be used to support a propensity inference, that is, "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Such evidence may only be used for other purposes, such as proving "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). However, "[i]n a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed

any other sexual assault," and "[t]he evidence may be considered on any matter to which it is relevant." Fed. R. Evid. 413(a). Thus, "[e]vidence that tends to show that a criminal defendant has a propensity to commit crimes ordinarily is excluded from trial, but Rule 413 makes an exception where past sexual offenses are introduced in sexual assault cases." *Foley*, 740 F.3d at 1086.

Although the propensity inference is permissible in sexual assault cases, evidence of a defendant's prior sexual assaults remains subject to Federal Rules of Evidence 401, 402, and 403. *United States v. Rogers*, 587 F.3d 816, 820 (7th Cir. 2009). The evidence is admissible only if it is relevant, Fed. R. Evid. 402, meaning that it must have a "tendency to make a fact [of consequence] more or less probable than it would be without the evidence," Fed. R. Evid. 401. And the court may exclude the evidence "if its probative value is substantially outweighed by a danger of … unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Erramilli makes a feeble attempt to argue that his prior sexual assaults were not relevant, but they were relevant for at least two purposes. First, they were relevant as propensity evidence, because "the simple fact that [he] had done it before makes it more likely that he did it again." *Rogers*, 587 F.3d at 821. Erramilli complains that his prior assaults had several distinguishing characteristics and were committed long before 2011, but these arguments go to the probative value of the prior assaults, not their relevance. Rule 401 requires only that the evidence have "any tendency to make a fact more or less probable than it would be without the evi-

dence," and the fact that Erramilli sexually assaulted women who were trying to sleep while onboard aircraft in 1999 and 2002 tends to make it more probable that he committed another such assault in 2011.

Second, Erramilli's prior sexual assaults were relevant to prove that he knowingly engaged in "sexual contact," which is required for a conviction under 18 U.S.C. § 2244(b). In order to prove that element of the offense, the government had to establish that Erramilli intentionally touched Susan Domino's inner thigh "with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(3). At trial, Erramilli argued that the government failed to prove the "sexual arousal" element, and he also suggested that his touching of Susan's leg was accidental. The fact that he was admittedly motivated by sexual desire when he committed the prior assaults tends to prove otherwise. Thus, those prior assaults were relevant to prove his intent in this case.

Erramilli also argues that his prior sexual assaults should have been excluded because their probative value was substantially outweighed by the danger of unfair prejudice. After determining that the evidence is admissible under Rule 413, "the district court is required to consider whether it should exclude the evidence under Rule 403." *Foley*, 740 F.3d at 1088. "Our role on appeal, however, is not to apply the Rule 403 balancing test *de novo* but to review the district court's decision for an abuse of discretion." *Id.* In this case, we cannot conclude that the district court abused its discretion because the probative value of Erramilli's prior sexual assaults was substantial and the danger of unfair prejudice was low.

At trial, Erramilli pursued two avenues of defense. First, he argued that Susan's account of what happened was incredible and that he simply never touched her inner thigh. This position made the use of Erramilli's past sexual assaults highly probative as propensity evidence because it bolstered Susan's testimony that she was sexually assaulted. *See United States v. McGuire*, 627 F.3d 622, 627 (7th Cir. 2010) ("The evidence was material because the defense was that [the victim] was a liar. … The evidence of the other boys established the defendant's propensity for, and *modus operandi* of, molestation of young boys and by doing so bolstered [the victim's] testimony."). Second, Erramilli argued that the government failed to prove that the contact he made with Susan's leg was intended for sexual arousal or gratification. In fact, he suggested that any contact was merely accidental. The evidence of Erramilli's past sexual assaults was highly probative of his intent because it had a tendency to refute this defense.

Erramilli attempts to minimize the probative value of his prior sexual assaults by pointing out several ways in which they were different from what he did to Susan Domino, but we agree with the district court's conclusion that the differences are insignificant and that the offenses are overwhelmingly similar. True, the prior offenses were committed against younger women, and they involved Erramilli reaching forward to touch the breast of a woman seated in front of him rather than reaching across his body to touch the inner thigh of a woman seated beside him, but all three offenses were crimes of opportunity in which Erramilli furtively groped unsuspecting women who were seated near him on airplanes. The offenses need not be identical to have substantial probative value.

Erramilli's argument is similar to that made by the defendant in *United States v. Julian*, 427 F.3d 471 (7th Cir. 2005), in which the defendant was charged with conspiring to travel in foreign commerce for the purpose of engaging in illicit sexual conduct with children based on his involvement in the operation of a hotel in Mexico that catered to pedophiles. At trial, Julian claimed that he understood the hotel to be a legitimate business "that was friendly to gay tourists rather than an illegitimate enterprise making children available to pedophiles." *Id.* at 488. To prove his knowledge and intent with respect to the hotel's illegitimate activity, the district court allowed the government to introduce Julian's prior conviction for molesting his eleven-year-old stepson. On appeal, Julian argued that the probative value of this prior assault was slight because it involved his stepson rather than unrelated children, and it did not take place in foreign commerce. *Id.* at 485. We disagreed, finding that while the prior offense "was distinguishable from the charged offense in a number of respects, a jury might reasonably infer from the prior conviction that Julian was a pedophile and in turn surmise that his involvement with [the hotel] was not as innocent as the defense made it out to be." *Id.* at 488. Similarly, a jury could reasonably infer from Erramilli's prior sexual assaults that he received sexual gratification from furtively groping women on airplanes, making it more likely that he committed the assault charged in this case.

Erramilli also argues that his prior assaults had little probative value because they occurred nine and eleven years before the charged offense. Rule 413 "establishes no time limit on the admissibility of prior offenses." *Julian*, 427 F.3d at 487. "That said, the date of the prior offense remains a factor for a court to consider in weighing the possibility that the

risk of unfair prejudice to the defendant posed by evidence of his prior offense might counsel against admission pursuant to Rule of Evidence 403." *Id.* In *Julian*, the prior sexual assault occurred twelve years before the charged offense, longer than either of the prior sexual assaults admitted in this case. The district court relied on *Julian* in concluding that the age of the prior assaults did not tip the Rule 403 balance, and we cannot say that the court abused its discretion in doing so.

Finally, we note that the danger of *unfair* prejudice was low in this case. "Because Rule 413 identifies [the] propensity inference as proper, the chance that the jury will rely on that inference can no longer be labeled as 'unfair' for purposes of the Rule 403 analysis." *Rogers*, 587 F.3d at 822. It is true that there remain improper uses of prior sexual assaults admitted under Rule 413. *Id.* For example, "a jury might use such evidence … to convict a defendant because it is appalled by a prior crime the defendant committed rather than persuaded that he committed the crime charged," or "because they think the defendant is a bad person generally deserving of punishment." *Id.* at 822–23. But the prior assaults in this case were not so appalling as to be likely to incite the jury to an emotional decision. Indeed, the child molestation admitted in *Julian* would have been more likely to do so. The mere fact that the prior offense sought to be admitted was a sexual assault cannot be enough to tip the scales in favor of exclusion under Rule 403; if that were the case, Rule 403 would swallow Rule 413.

Moreover, the government complied with the district court's admonition to "limit its presentation to evidence that is necessary to convey the essential facts underlying the two

prior offenses" and "limit emotional testimony from the prior victims." And at the close of the case, the district court instructed the jury to "[k]eep in mind that the defendant is on trial here for abusive sexual contact, not for the other crimes." In light of the nature of the prior assaults, the manner in which the evidence was presented, and the jury instructions, a jury would have been unlikely to use the evidence for an improper purpose.

In sum, Erramilli's prior sexual assaults were admissible under Rule 413 because they were relevant to prove his propensity to commit the charged offense, as well as the requisite intent for that offense, and the district court did not abuse its discretion in refusing to exclude the evidence under Rule 403.

## B. JURY INSTRUCTION

"We review de novo whether a challenged jury instruction fairly and accurately summarized the law, but the trial court's decision to give a particular instruction is reviewed for an abuse of discretion." *United States v. Lawrence*, --- F.3d ----, 2015 WL 3463089, at *8 (7th Cir. Jun. 2, 2015). "The district court is afforded substantial discretion with respect to the precise wording of instructions so long as the final result, read as a whole, completely and correctly states the law." *United States v. Marr*, 760 F.3d 733, 743 (7th Cir. 2014) (internal quotation marks omitted). "We will reverse only if the instructions, taken as a whole, misled the jury." *Lawrence*, 2015 WL 3463089, at *8.

Before trial, the government proposed the following jury instruction regarding the use of Erramilli's prior sexual assaults:

> You have heard evidence that the defendant
> committed crimes other than the ones charged
> in the indictment. Before using this evidence,
> you must decide whether it is more likely than
> not that the defendant did the crimes that are
> not charged in the indictment. If you decide
> that he did, then you may consider this evi-
> dence on any matter to which it is relevant.
> Keep in mind that the defendant is on trial here
> for abusive sexual contact, not for the other
> crimes.

This proposed instruction generally tracks the language of
the instruction for other-acts evidence admitted under Rule
404(b) from the pattern jury instructions developed by a
committee appointed by this court. *See* Committee on Feder-
al Criminal Jury Instructions for the Seventh Circuit, Pattern
Criminal Jury Instructions of the Seventh Circuit 3.11 (2012),
*available                                                      at*
http://www.ca7.uscourts.gov/Pattern_Jury_Instr/7th_crimina
l_jury_instr.pdf. However, consistent with the commentary
to the pattern, instead of identifying permissible purposes
for which the evidence may be used under Rule 404(b), it in-
corporates Rule 413's statement that such evidence may be
considered "on any matter to which it is relevant."

Concerned that the jury might use his prior sexual as-
saults for an improper purpose, such as convicting him be-
cause he is a bad person, Erramilli asked the district court to
re-insert the admonition from the pattern instruction that the
evidence may not be considered "for any other purpose."
Thus, if Erramilli had his way, the jury would have been told
that while the evidence of his prior sexual assaults could be

considered "on any matter to which it is relevant," it could not be considered "for any other purpose." Instead, the district court decided to alleviate that risk of improper use by modifying the instruction to identify the specific purposes for which the prior acts were relevant. The court instructed the jury that the evidence could be used "for the following purposes: Motive, intent, knowledge, absence of mistake, lack of accident, and propensity to commit sexual assault." The court declined to instruct the jury that the evidence could not be used "for any other purpose."

Erramilli argues that this was an abuse of discretion because it left open the possibility that the jury might use the evidence for an improper purpose. But the jury was instructed to keep in mind that Erramilli was "on trial here for abusive sexual contact, not for the other crimes." And beyond relevance, Rule 413 imposes no limits upon the purposes for which prior sexual assaults may be used in sexual assault cases. Indeed, the district court did more than was necessary by identifying the particular purposes for which the evidence was relevant. Erramilli's proposed instruction would have only served to confuse the jury by first stating that the evidence may be considered on any matter to which it is relevant and then purporting to limit the purposes for which the evidence may be considered. As a result, we cannot say that the district court abused its discretion in crafting the instruction the way it did.

### III.    CONCLUSION

The district court did not abuse its discretion in admitting Erramilli's prior sexual assaults under Rule 413 or in instructing the jury regarding those prior assaults. Therefore, Erramilli's conviction is AFFIRMED.